Branham *et al. v.* Mayor and Common Council of San José *et als.*

---

ISAAC BRANHAM AND WILLIAM L. SMITH, TRUSTEES FOR JAMES F. REED *et al. v.* THE MAYOR AND COMMON COUNCIL OF THE CITY OF SAN JOSE, AND WILLIAM DANIELS, JAMES C. COBB, AND S. O. HOUGHTON, COMMISSIONERS OF THE FUNDED DEBT.

POWER OF AYUNTAMIENTO.—An Ayuntamiento was a municipal body, and could take and exercise only such powers as were conferred upon it by the will of the sovereign, as expressed in the laws creating it.

COMPLAINT—AVERMENT OF CONCLUSION OF LAW.—An averment in a complaint that an Ayuntamiento had full power and lawful authority to do a particular act, is an averment of a conclusion of law, and does not tender an issue of fact.

DEMURRER—WHAT IT ADMITS.—A demurrer to a complaint containing such allegation does not admit its truth.

SAME.—A demurrer admits the truth of such facts only as are issuable and well pleaded.

PUEBLO LANDS—MORTGAGE OF.—An Ayuntamiento had no power to mortgage the lands of the pueblo, and a mortgage on such lands given by it was a nullity, and vested in the mortgagee no interest in the lands.

VOID MORTGAGE—DECREE FORECLOSING.—A decree foreclosing a mortgage made by the Ayuntamiento of San José on the pueblo lands, in an action in which the City of San Jose, the successor of the Ayuntamiento, was a party defendant, did not affect the city, nor estop it from setting up its title to the lands.

SHERIFF'S SALE UNDER VOID DECREE.—A judicial sale under such decree, and the execution of a Sheriff's deed to the purchaser, did not vest in him any title to the lands, but all the proceedings, including the decree sale and Sheriff's deed, were utterly void.

SHERIFF'S DEED—WHAT IT CONVEYS.—A decree foreclosing a mortgage, and directing a sale of the mortgaged premises, and the execution of a Sheriff's deed under the decree, transfers to the purchaser whatever interest the mortgage created and vested in the mortgagee, and nothing more.

PARTIES DEALING WITH MUNICIPAL CORPORATION.—Parties dealing with a munici-

74

Branham *et al. v.* Mayor and Common Council of San José *et als.*

pal corporation are chargeable with full knowledge of its powers, and act at their peril.

SAME—CONFIRMING VOID SALE.—An agreement made between the municipal authorities of San José on the one part, and the purchasers of the pueblo land at a judicial sale made under a decree foreclosing a mortgage executed by the municipality on those lands on the other part, confirming unto said purchasers all the rights and interests in such lands which they acquired by their purchase at the Sheriff's sale, and releasing unto them all the right and title which the city then had, or might afterwards have therein, was void, and conferred upon said purchasers no new right.

CONFIRMATION—EFFECT OF.—A confirmation may make good a voidable or defeasible estate, but cannot operate upon or aid an estate which is void in law.

RELEASE—EFFECT OF.—Where there is no estate in a releasee to support a release, or upon which it can operate, a release is void.

SAME—WHEN VOID.—A release, unless the releasee is in possession, is void.

SETTING ASIDE SALE.—A naked purchaser at a judicial sale made under a decree foreclosing a mortgage, is not entitled to have the satisfaction of the judgment under which the sale was made set aside and to be subrogated to the rights of the plaintiff in the judgment, because the sale was void, and he acquired no title to the property purchased.

SAME.—A purchaser at a judicial sale made under such decree cannot maintain an action to recover back the purchase money. His mistake was one of law as to the validity of the sale, and from such mistake no relief can be granted.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

The demurrer to the complaint was sustained, and judgment rendered for defendant in the Court below, and plaintiff appealed.

The other facts are stated in the opinion of the Court.

*J. B. Crockett,* for Appellant.

The city is precluded by the proceedings on the foreclosure from raising this point. The respondent was a party to the foreclosure suit, was served with process, and appeared to the action.

If the mortgage was void for any reason, that defense should then have been made; and having failed to make it, the respondent is estopped, by the decree of foreclosure, from impeaching the validity of the mortgage. It has become *res judicata*, and the validity of the mortgage is no longer open for discussion.

The principle which I invoke is stated as follows in a leading case decided by Chancellor Kent, then a Justice of the Court of Errors of New York : " The judgment or decree of a Court possessing competent jurisdiction is not only final as to the subject matter thereby determined, but also as to every other matter which the parties *might* litigate in the cause and which they *might* have decided." (*Le Guen* v. *Gouveneur et als.,* 1 John Ca. 436.)

There is nothing new in this principle, and it is now too well established, perhaps, to need the citation of numerous authorities ; nevertheless, to show how broadly it has been recognized in this State and elsewhere, I refer to the following cases : *Dewey* v. *Gray,* 2 Cal. 377 ; *Clary* v. *Hoagland,* 6 Cal. 687 ; *Gunter* v. *Laffan,* 7 Cal. 592 ; *Cal. St. Nav. Co.* v. *Wright,* 8 Cal. 592 ; *Cahoon* v. *Leavy,* 10 Cal. 216 ; *Davidson* v. *Dallas,* 15 Cal. 75.

The respondent, therefore, had the opportunity in the foreclosure suit to assail the mortgage as void, or fraudulent, or for any other reason invalid.    But no such defense was made ; or, if made, was overruled by the Court.    If the final decree was erroneous, the respondent's remedy was by appeal.    But no appeal was taken, and the judgment of foreclosure was perfected by a sale, at which the property was purchased by third parties at a large price.    When these purchasers now set up the Sheriff's deed as a muniment of title, the respondent seeks to go behind the decree of foreclosure, and assails the mortgage as having been made without authority of law ; and endeavors to impeach the foreclosure sale on the ground that the property could not be mortgaged or sold, and that, therefore, the sale was a nullity.    These were proper defenses, if valid, in the foreclosure suit ; but after a final decree in that case, the respondent is estopped by it, and cannot in this action re-try matters which might have been litigated in that case.

The counsel for respondents claim that the contract of June 12th, 1851, was void as a deed of confirmation, or as a release, because there was no title, or color of title, in Branham &

White to be confirmed, and no estate in them on which a release could operate. They assume that the Sheriff's sale was an absolute nullity, and therefore Branham & White had no title on which to predicate a release or deed of confirmation. If their premises be conceded, and if the contract of June 12th be treated only as a technical release or deed of confirmation, their conclusion may be correct. But the contract is not simply a technical release or confirmation. It is a *compromise* of doubtful rights, in which each of the parties concedes to the other a portion of his supposed right. The principle invoked by the counsel has no application to such a case, and applies only where a person holding a portion of the estate releases his interest to the holder of the remaining portion, or where a prior defective conveyance is confirmed by a new one. Compromises of doubtful rights rest upon a wholly different basis; for every compromise necessarily assumes that the right is with the one party or the other, but owing to a doubt as to which party is in the right, they make mutual concessions, in order to end the dispute ; and hence, compromises fairly made are never disturbed, even though it afterwards appear that one of the parties was wholly without title. The contract in question purports to be, and is, simply a compromise, in which each party cedes to the other a portion of his supposed rights. The question, therefore, is entirely free from the technical difficulties suggested by the counsel.

I concede on this argument, as I did on the oral argument, that the mortgage was a nullity for want of power in the Ayuntamiento to make it. No title, therefore, passed at the foreclosure sale. It would be absurd, then, to issue a new order of sale and repeat the process of seeking to enforce a void mortgage. The counsel admit that the judgment was one of *foreclosure only*, and not a money judgment on which an execution could issue. The mortgage being void, the judgment founded on it was void.

The judgment as well as the mortgage being void, the original demand of Belden, Aram & Reed was not merged, and remained precisely as if no judgment had been rendered.

It remained simply a debt due from the city and Belden, Aram & Reed, and the debt was not satisfied, nor the evidence of indebtedness cancelled.   The judgment being void, the proceedings of the Sheriff were void.   His return on the order of the sale, that the judgment was paid, was a nullity because there *was* no valid judgment or order of sale.   He had no power whatever in the premises, and all his acts were void. The original debt, then, was not satisfied, and Branham & White, under a mistake of both law and fact, advanced to Belden, Aram & Reed the full amount of the demand which they held against the city.   The principle involved is this, to wit : if a stranger, under a mistake of law and fact, pay the debt of a third person, is he entitled to be subrogated to the rights of the creditor, and particularly if the evidence of indebtedness be not cancelled ?   If a stranger, under the mistaken belief that he is liable as surety for the debtor, pay the debt, is he entitled to be subrogated ?   Or, if a surety who has been released· pay the debt in ignorance of that fact, is he entitled to take the place of the creditor ?   If the innocent holder of a junior mortgage, which afterwards turns out to be forged, pay off a prior incumbrance, is he entitled to be subrogated to the rights of the creditor ?   If a junior mortgage be foreclosed, and at the sale a stranger purchases the equity of redemption and pays off the prior mortgage, and if it afterwards appear that the foreclosure sale was void for want of jurisdiction in the Court, would the purchaser be subrogated ?

If, by means of fraudulent representations, a stranger be induced to pay the debt of another, he would be entitled to be subrogated on the ground that he acted upon a falsehood and would not otherwise have parted with his money.   On the same principle, and for the same reason, he is entitled to a like relief when he pays the debt of another under a mistake of law or fact.   In this case, Branham & White acted upon a mistake, both of law and fact.   They were mistaken in the law as to the power of the Ayuntamiento to mortgage the land, and as to the obligatory force of the mortgage.

They were mistaken, also, as to the fact that there was a valid decree of foreclosure. There was manifestly a mistake in these respects on the part of all concerned. It was a plain case of mutual mistake. They all supposed the mortgage and judgment to be valid. In cases of mutual mistake, the transaction ought not to stand, because it lacks the primary element of an obligatory contract, to wit: the assent of the united will and judgment of the parties.

"Equity will relieve against a mutual mistake, when the property which one party supposed himself purchasing, and the other supposed himself selling, does not exist." (*Marvin* v. *Bennett*, 8 Paige, 312.) The only difference between that case and this is, that though the property existed, the parties had no power to sell it as they supposed thay had. They all supposed the title would pass at the foreclosure sale. On this belief Branham & White advanced their money.

In a contract for the sale of lands, if both parties are mistaken as to the vendor's *title*, which was supposed to be perfect, but proves to be void, a Court of equity will relieve the vendee from the contract. (*Hadlock* v. *Williams*, 10 Verm. 570; *Champlin* v. *Layton*, 1 Edw. Ch. 467; Same case, reported 18 Wend. 407.)

And in a clear case, equity will relieve against a contract founded on a mistake of law alone. (*Lamott* v. *Bowly*, 6 Har. & J. 500; *Garner* v. *Garner*, 1 Desau, 437; *Lowndes* v. *Chesholm*, 2 McCh. 455.)

A vendee may rescind the contract, when it appears the parties supposed the vendor had the title, but in fact he had none. (*Bowlin* v. *Pollock*, 7 Monr. 26.)

If a contract of sale ought not in conscience to bind one of the parties, as if there had been mistake or fraud, a Court of equity will set aside the contract. (*Hepburn* v. *Dunlop*, 1 Wheat. 179; *Dunlop* v. *Hepburn*, 2 Wheat. 231.)

If a judgment be supposed to be a lien on land when it is not, this is a mistake in law, which will be relieved against, if the defendant can be placed in *statu quo.* (*Crosier* v. *Ager*, 7 Paige Ch. R. 137; *Williams* v. *Champion*, 6 Ham. 169;

*Spring* v. *Harven,* 3 Jones Eq. N. C. 96; *Schermerhorn* v. *Barhydt,* 9 Paige, 28.)

The doctrine of subrogation does not depend on *privity,* nor is it confined to cases of suretyship; but it is a mode which equity adopts to compel the ultimate discharge of the debt by him who, in good conscience, ought to pay it. (*McCormick* v. *Irwin,* 35 Penn. State R. 111.)

So where the land is purchased in good faith at an administrator's sale, *which is void* because the requirements of the statute were not complied with, and the purchase money has been applied in extinguishment of a mortgage to which the land was subject, the purchaser will be subrogated to the rights of the mortgagee to the extent of the purchase money, and the owner will not be entitled to recover possession until he repays the purchase money. (*Valle* v. *Fleming,* 29 Mo.; 8 Jones, 152.)

In this case, Branham & Smith paid a large sum for the purchase money at the foreclosure sale, which was applied in extinguishment of a just debt due from the respondent to Belden, Aram & Reed; and I claim that if the sale was void and the mortgage a nullity, Branham & Smith should be subrogated, *pro tanto,* to the rights of the creditors Belden, Aram & Reed, under the original obligation, and are entitled to recover from the respondent the amount paid, with the same rate of interest to which Belden, Aram & Reed were entitled.

*W. T. Wallace,* and *S. O. Houghton,* for Respondents.

The counsel for appellant seeks to make the broad sweeping averment which he has chosen to insert in his complaint, that the Ayuntamiento *had the lawful power and authority to contract the debt and make the mortgage,* conclusive alike upon the law, this Court, and the rights of these defendants.

We might answer this by saying that the question as to the existence of this asserted power in the Ayuntamiento *is itself a question of law,* and that the opinion in *Hart* v. *Burnett* announces the *law* to be *directly contrary* to what it is *averred* to be in the *complaint.* The effect of a demurrer is to admit

the truth of the *facts only which are well pleaded*, in order that the law, as contradistinguished from but arising upon such facts, may be determined—nothing more. The averment in the complaint, that the instrument of mortgage was "*in all respects binding and obligatory* upon said pueblo, and that said Town Council or Ayuntamiento had *due and lawful authority and power* to enter into said contract * * * and the said contract and mortgage were in *law obligatory* on said pueblo," are not averments of matters of *fact*, but are only averments of *conclusions of law*, and are therefore *not admitted by the demurrer*.

In *Thomas* v. *Desmond*, 12 Howard's Practice Reports, the allegation of the complaint was, "that the said plaintiff is now the sole *owner* of the said demand against the said defendants." The Court said that "is merely an allegation of a *conclusion of law*."

In *Adams* v. *Holley, Admx.*, 12 Howard's Practice Reports, 321, the allegation was, "the plaintiff became and was the owner of all the interests, rights, and claims, * * * and *owner* of all accounts; and that the moneys due from said Holley, at the time of his death, to all the said proprietors, became and were and still are the property of the plaintiffs." The Court said, in relation to this averment: "Here is no fact alleged showing the plaintiff's title to the rights and interests of other proprietors, of which he claims to be the owner * * *. The plaintiff only alleges that he is the *owner*, etc., which is only a *legal conclusion*." (*McMurray* v. *Gifford*, 5 How. P. R. 14; *Bentley* v. *Jones*, 4 How. P. R. 204.)

It will be seen by reference to the complaint, that in the contract of June 12th, 1851, the city authorities undertook to *confirm* unto Branham & White all the right and interest which Branham & White had acquired at Sheriff's sale; and before entering upon the examination of the nature and extent of the powers of the municipality of San José over the pueblo lands, we desire to submit the proposition of law that insofar as this is an instrument of *confirmation merely*, it did not aid or strengthen the title of the confirmees named therein,

Branham *et al. v.* Mayor and Common Council of San José *et als.*

and in the very nature of things *could not do so,* because of the *utter nullity of the estate attempted to be confirmed.*

In the case at bar the releasees had no estate in law in the land; they had no possession of any part of it; there was, of course, no privity of estate between them and the releasors; and for these reasons *alone,* resting as they do simply upon the situation of the *confirmees* and *releasees* in relation to the land, and conceding, for the purpose of the consideration of this proposition, the most ample power in the city authorities to. sell, we submit that the confirmation and release were simply *void* and *inoperative,* for reasons based *wholly* upon the *condition* and *situation* of the supposed *releasees* and *confirmees* in relation to the property which is the subject of release and confirmation. That this is their condition *at law,* and that no fraud, accident, mistake of fact, or other matter of equity cognizance is shown entitling them to equitable relief.

The plaintiffs are not entitled to be substituted or subrogated to the rights of Belden, Aram & Reed, who claim to have recovered a judgment against the city for an indebtedness contracted by the Ayuntamiento of the pueblo.

The plaintiffs claim that, although it be true that the instrument of mortgage made by the Ayuntamiento, and the sale made thereon by the Sheriff, were insufficient to pass the title of the land to the plaintiffs; and although it be true that the contract of June 12th, 1851, ought not, on the principles of equity jurisprudence, to be specifically enforced by this Court, yet the plaintiffs are, at *all events,* entitled to be substituted to such rights as Belden *et al.* claimed upon their judgment against the city; and this asserted claim of the plaintiffs to be substituted, is made by their counsel, in his argument, to rest upon the *general doctrine of subrogation,* as understood in the law, and also upon the *circumstance. that the money of the plaintiffs went to satisfy the Belden judgment,* and that the title to the property they purchased at the Sheriff's sale has *failed.* We will consider these two positions of the counsel together.

The bill discloses the fact that in the suit of *Belden* v. *The City,* a mortgage made by the Ayuntamiento, on the 9th April,

75

1850, upon the pueblo lands, was pretended to be foreclosed, and the premises ordered to be sold to satisfy judgment. The judgment or decree *simply forecloses this supposed mortgage*, and does not provide any relief over against the defendants for any *residue or deficiency* remaining due after the sale of the supposed mortgaged premises.

We are not indulging now in any criticism upon the mere verbiage of the complaint. An inspection of the record of the proceedings shows that the fact is really so.

The law in force at the time of these proceedings, (Laws 1850, p. 456,) provides that the judgment upon foreclosure might direct an execution for any deficiency remaining after sale of the mortgaged premises; but in this case the complaint did not ask it, nor did the decree award it, although it provided that any *excess* in the *amount realized* by the sale over the amount of the debt, should be *paid over* to the defendants; it did not direct any execution for *any deficiency* that might arise. This was, no doubt, the intent and design of both parties, because the bill does not disclose to us that the Mayor and Common Council resisted the proceedings in any way.

Now, this prayer to be subrogated to the rights of the parties in that decree simply amounts to a proposal to revive the decree to sell the pueblo lands under the invalid mortgage made by the Ayuntamiento on the 9th day of April, 1850, because the *only relief* awarded to the plaintiffs in that decree was a sale of these lands under that instrument of mortgage; and a decree of subrogation of these plaintiffs in the suit at bar to the rights of the other plaintiffs in the decree of *Belden et al.* v. *The Mayor et al.* cannot *alter* the terms of that decree itself. If the Court were now appealed to in the first instance to decree a foreclosure of that instrument of mortgage, it would not do so with the light of the decision in *Hart* v. *Burnett* upon the subject, and yet the proposed subrogation indirectly would do *that very thing*.

Another consideration which is fatal to the claim of subrogation, is that the bill is not properly drawn for the purpose of such relief. It does not make the *necessary parties defend-*

*ant* to enable the Court to render such a decree.    The claim is that the plaintiffs be subrogated to the rights of Belden, Aram & Reed, under their decree against the defendants; and it would seem a clear proposition of law, even without the aid of authority, that if the supposed rights of any man are to be taken from him and given to another by the judgment of a Court, he whose supposed rights are to be thus transferred should be a party before the Court.

If the decree is made without the presence of Belden, Aram & Reed, the supposed owners of these rights, would such a decree bind them?    Could they not resist it whenever anything under it was claimed as against them?    Would the defendants or any one else be protected by such a decree if they afterward treated with the plaintiffs in this suit as the real owners of such supposed rights?    How can a decree be made to reach a right or title of *any kind,* unless such right or title is *brought before the Court to be bound by a decree?*

In Mitford's Chancery Pleadings (Note on Parties, 398) it is declared that "the general rule is that all are necessary parties who have an interest in the subject matter which may be affected by the decree.    The rule is founded on the great principle of preventing future litigation, and taking away multiplicity of suits, by adjudicating upon the rights of all such parties upon whom a decree may or ought to operate."

The cases of *Caldwell* v. *Taggart,* 4 Peters, 190, and *West* v. *Randall,* 2 Mason, 181, declare that the general rule is, that however numerous the persons interested in the subject of a suit, they must all be made parties plaintiff or defendant, in order that a *complete decree* may be made—it being the constant aim of a Court of equity to do complete justice, by embracing the *whole* subject, deciding and settling the rights of *all* persons interested in that subject, and thus make the performance of the order *perfectly safe* to those who have to obey it, and also prevent litigation in the future.

It will be borne in mind that at the time the plaintiff paid the twenty-six thousand dollars there had been *no treaty or negotiation of any kind* between them and the *city authorities;*

there was no privity or connection between the city and the plaintiff at all in making that purchase; they never met in relation to the matter of this purchase or sale until the 12th of June, 1851, and which was a period of about *one month after* the plaintiffs made their purchase at Sheriff's sale, and *had paid all the money they ever paid.*

The plaintiffs were therefore strangers to the proceedings—bidding and purchasing at a judicial sale just as any one else had a right to do; there is then a total want of any such feature as *inducements held out to plaintiffs to purchase, requests or promises made, confidence reposed or abused;* and if the plaintiffs may be subrogated to the rights of the plaintiff in execution, then it must be because the rule is that *any* purchaser *upon failure of the title to the property purchased* at a judicial sale, may *recover* of the defendant in execution the *purchase money* that he may have expended; in other words, *by a fiction of a Court of equity,* the defendant in execution is supposed, upon sale of his real estate by the Sheriff, to enter into the *most ample covenants of seizin and general warranty with the purchaser, his heirs and assigns,* as to the *title* under which the property is held. To support this view, the industry of the plaintiff's counsel has presented for the consideration of the Court a *single* case: *McLaughlin's Adm'r* v. *Daniel,* 8 Dana, Ky. 182. The property sold in that case was not *real estate*—it was a negro boy; possession of the negro passed to the purchaser, Daniel, at the sale, but the negro was afterwards recovered from the vendee of Daniel in an action of detinue. The Court cites no authority, and does not enter into any elaborate reasoning in its decision. The decision itself might have been put upon the ground that as in the sale of a chattel by a party where possession is delivered there *is in law an implied warranty of title,* so the Sheriff making sale for the party defendant under execution would be regarded as his agent for the purpose of this implied warranty, as that officer is unquestionably considered the *agent of both* parties to an execution for *many purposes.* But this rule of *implied* warranty does not apply to sales of *real estate,* and it

is significant that the research of the counsel has failed to produce a case where *substitution* was allowed in case of *real estate on failure of title*.

Next, as to the plaintiff's claim to be reimbursed by the defendants the twenty-six thousand dollars bid at the Sheriff's sale, by reason of the *failure of the title they purchased*, and their right to maintain this, *an independent action*, to be relieved touching their purchase at the sale under the decree of foreclosure, we cite the case of *Boggs* v. *Hargrave*, 16 Cal. 562.   The facts were, that in 1857 Harbin executed a mortgage to Fowler and Hargrave upon certain premises, and after making the mortgage, Harbin conveyed the whole of the mortgaged premises to Bristol.   Fowler and Hargrave afterwards proceeded to foreclose their mortgage, but made *only Harbin* a defendant in the suit, and *did not bring Bristol before the Court*.   At the sale under the decree, Boggs purchased the premises and *paid the purchase money*.   Finding that he had acquired *no title* to the land, he sued the mortgagees to recover back the money.   It was held that he *could not recover*.

The Court say : " The doctrine of *caveat emptor* applies only to sales made upon valid judgments, and is usually invoked with reference to sales upon execution issued against the general property of a judgment debtor.   In these latter cases, *a defect of title is no ground* for interference with the sale or a refusal to pay the price bid.   The purchaser takes upon himself *all the risks*, and bids with *full knowledge* that in any event he only acquires *such interest* as the debtor possessed at the date of the levy or the lien of the judgment, and that he may *possibly acquire nothing*."

Having thus announced the general rule as to sales upon execution, the Court proceeds to remark upon the law applicable to sales upon the foreclosure of a mortgage, thus :

" But a somewhat different rule prevails in cases where particular property is the subject of sale by a specific adjudication, as where the interest of A. in a certain tract is decreed to be sold.   To the validity of a decree of this character the

presence of A. is essential, and when present the decree binds him, and is effectual, by the sale it orders, to transfer the estate. A valid decree in a mortgage case operates upon such interest as the mortgagee possessed in the property at the execution of the mortgage. That interest *may not constitute a valid title;* it may not, in fact, be of any value, and the purchaser *takes that risk.* To that extent the doctrine of *caveat emptor* applies even in those cases, and in all cases of adjudication upon specific interest, but no further. The interest specifically subjected to sale, *whatever it may be worth*, a purchaser is entitled to receive; it is for that interest he makes his bid and pays his money."

We submit that this reasoning is conclusive that the plaintiffs cannot maintain this suit upon the claim of subrogation. They purchased without any misrepresentation, undue influence, or misplaced confidence. They knew that they purchase upon a foreclosure of a mortgage upon pueblo lands. No fact that is known to them now was unknown to them then. If they made a mistake, it was a *mistake of law only*—just the mistake that Boggs made when he supposed that he would get the title to the lands he purchased, notwithstanding that Bristol was not made a party, and for this mistake of law the Supreme Court declare that *no relief can be had in an independent suit.* The Court concludes that the only relief that a party purchasing can have in such cases, is by an application made to the Court in the original foreclosure suit, and *not* by an independent action. Such application, too, the Court says, must be made in a *reasonable time.* (*Ten or eleven years* after the purchase would hardly be reasonable time, we suppose.) But the counsel complains that this remedy would not benefit the plaintiffs, because there could be no resale, the mortgage itself (and, we would add, the *debt, too*) being void, and there being therefore *nothing* to sell. That is our view, also; but, because of this view, we do not see that it follows that the settled rules of law and equity must be disregarded in order to create a remedy for the plaintiffs. The proposition may be stated thus : the *general rule* at law and in equity, gov-

erning purchases such as plaintiffs made in this case, is that of *caveat emptor*.

By the Court, SANDERSON, C. J.

The appeal in this case comes before us on demurrer to the complaint. The facts as alleged in the complaint are substantially as follows :

By the Constitution, the Pueblo of San José was declared the seat of government until removed by law. The first session of the Legislature was held at that place. There was then no building belonging to the State or the Pueblo of San José adapted to the purposes of the Legislature, and the citizens of the pueblo petitioned the Ayuntamiento, or Town Council, to procure one. This the Ayuntamiento endeavored to do, but failed for the want of means and credit. Thereupon, seventeen citizens of the pueblo purchased a lot and building, situated within the pueblo, for the accomodation of the Legislature. In accordance with an understanding to that effect, the deed was made to Aram, Belden & Reed, in trust for the purchasers, who were to convey the property to the pueblo whenever the pueblo could pay for the same. On the 9th day of April, 1850, the Ayuntamiento purchased the premises from Aram, Belden & Reed, at the price of thirty-four thousand dollars, payable within six months, with interest at six per cent per month; and to secure the payment of that sum, pledged the State scrip or temporary loan bonds in the Treasury, and the revenues which might be raised that year by taxation, and mortgaged what is known as the pueblo lands. The first Legislature met in the building thus purchased by the Ayuntamiento, and on the 27th day of March, 1850, it passed an Act incorporating the City of San José. By the provisions of the Act the City of San José succeeded to all the legal rights and claims of the pueblo, and became subject to all the liabilities incurred and obligations created by the Ayuntamiento. The city government was limited in the exercise of its municipal powers to the geographical boundaries established by the Act; and over the pueblo lands situ-

ated outside of those limits the city government could exercise no authority, except to "rent, lease, or sell" the same. The City of San José thus became the successor in interest of the Pueblo of San José to the lot and building in question, on which the purchase money, or a part of it, was still unpaid, and the pueblo lands mortgaged by the Ayuntamiento to secure its payment. The city authorities took possession of the lot and building, and afterwards sold them to the County of Santa Clara for the sum of thirty-eight thousand dollars, payable in three months, with interest at the rate of four and a half per cent per month, and directed the proceeds of the sale to be applied toward the payment of the debt due to the trustees, Aram, Belden, and Reed; but the moneys, when collected from the county, were not so applied, but were expended by the city government for other purposes. Thereupon, the trustees sued the city, and in December, 1850, recovered a judgment and a decree of foreclosure of the mortgage executed by the Ayuntamiento, under which the pueblo lands were sold by the Sheriff to Branham and White, trustees, etc., plaintiffs in this action. The proceeds of this sale were more than sufficient to satisfy the judgment, and the same was duly satisfied of record, and the overplus was paid to and received by the city. On the 26th of May 1851, the Sheriff conveyed the pueblo lands to the purchasers.

After this purchase some dispute arose between the city and the purchasers concerning the lands in question, and the City Council, by ordinance, authorized the Mayor to settle and arrange the dispute with the purchasers. Under this ordinance the Mayor entered into a contract with the purchasers on the 12th of June, 1851, whereby, after reciting the purchase by the trustees at the Sheriff's sale, it was agreed that the trustees and the Mayor should conjointly sell the pueblo lands in such a manner as to realize to the trustees the amount of the purchase money paid by them and all costs and expenses. If the money thus realized should prove insufficient for that purpose, the city was not to be bound for the deficit. If, on the contrary, there should be a surplus, the same was to be

invested for the benefit of the city and trustees in a railroad then contemplated between San José and San Francisco, the same to be invested, in the proportion of three to one in favor of the trustees. The contract also contained certain provisions touching "town lots" and "five hundred acre lots," and the confirmation of the pueblo title to the land; and in consideration of the covenants of the contract the city ratified and confirmed the title acquired by the trustees at the Sheriff's sale, and released to them all the right and title which the city then had or might thereafter acquire to the whole or any portion of the land.

This contract was duly ratified by the Common Council of the city, and the Mayor was directed to carry the same into effect. But the city afterwards refused to do so, and conveyed all the right, title, and interest in the land to the Commissioners of the Funded Debt of the City of San José. Upon this state of facts the plaintiffs ask for various kinds of alternative relief: First—A decree setting aside the conveyance from the city to the Commissioners of the Funded Debt; Second—Or, if that cannot be done, a decree for the specific performance of the contract of the 12th of June, 1851, against the city and the Commissioners, and an injunction perpetually restraining them from making further sales or conveyances of said lands, except in the manner and on the conditions specified in said contract of the 12th of June, 1851, and also a decree requiring them to account with the plaintiffs for all moneys received by them or either of them from sales of land already made; Third—And inasmuch as the purchase money paid by said Branham and White liquidated the debt of the city to Aram, Belden and Reed, if for any reason it shall be adjudged that the Sheriff's deed and the contract of the 12th of June are invalid, plaintiffs ask that the satisfaction of the judgment in favor of Aram, Belden and Reed, and against the city, may be set aside, and the Sheriff's sale held for naught, and that they be subrogated to all the rights which Aram, Belden and Reed had in and to said judgment and mortgage prior to the satisfaction thereof, and that they have

76

leave to proceed under said judgment, by execution or otherwise, to collect the whole of said judgment, both principal and interest, with a prayer for general relief.

Several points are made on the demurrer, which we shall notice, so far as it may be necessary for the purposes of this case, in the order in which they are presented in the briefs of counsel:

I. Had the Ayuntamiento power to mortgage the pueblo lands to Aram, Belden and Reed, under the circumstances and for the purposes narrated in the complaint?

This question is not discussed by counsel for appellant, under the pretense that it cannot be made upon demurrer; holding that, inasmuch as he has averred that the Ayuntamiento had full power and authority to make the mortgage, such power and authority is admitted by the demurrer. The Ayuntamiento, being a municipal body, could take and exercise only such powers as were conferred by the will of the sovereign, as expressed in the laws creating it. Every question as to what power has been conferred by such laws is a question of law and not of fact; and the averment in the complaint that the Ayuntamiento had full power and lawful authority to do the act in question, is but an averment of a conclusion of law, and does not tender an issue of fact. A demurrer admits the truth of such facts as are issuable and well pleaded; but it does not admit the conclusions which counsel may choose to draw therefrom, although they may be stated in the complaint. It is to the soundness of those conclusions, whether stated in the complaint or not, that a demurrer is directed, and to which it applies the proper test.

That the Ayuntamiento had the power to execute the mortgage to Aram, Belden and Reed, does not seem to be seriously claimed by the learned counsel for appellant. Obviously, such a position could not be upheld without a complete overthrow of the law, as clearly and explicitly declared in the able and learned opinion of Mr. Justice Baldwin, in *Hart* v. *Burnett*, 15 Cal. 580. The opinion in that case is a monument to the

learning and industrious research of the Justice by whom it was delivered. It is a clear and explicit exposition of the law as to the powers of municipal bodies under the Spanish and Mexican *regime,* and of the tenure by which their lands were held, and must now be regarded as a finality upon those subjects. At page 590, Mr. Justice Baldwin says: "These lands are held for the inhabitants in perpetuity, for their use and benefit, to be used in building up, sustaining, and supporting a town, whose interests and rights are lodged in the hands of certain agents, acting under defined and expressly limited powers, given for the carrying out of the objects and uses prescribed; but with no power to alienate or change, much less to destroy the trust. That these agents were clothed with the power to make grants to settlers or others of limited quantities of this land, or to dispose of portions of it for the support of the municipality, implies no power to sell it out in gross or even *to mortgage* it; for if this were the case, the prosperity, if not the existence of the town, would depend, not on the laws, but on the will of those agents, acting in violation of their spirit and letter."

Such being the law, it follows that the mortgage upon the pueblo lands made by the Ayuntamiento to Aram, Belden, and Reed, was an absolute nullity, and vested in the latter no interest whatever in the lands. If the Ayuntamiento had no power to mortgage, it follows that all the subsequent proceedings, up to and including the Sheriff's deed to Branham and White, were utterly void. Upon this point, also, at page 580, Mr. Justice Baldwin says: "If it be true, as seems clear from the citations we have given, that the municipal officers could not mortgage or sell these lands to pay a debt created by them, we do not see how it can be contended that they could accomplish the same result by borrowing money and then confessing judgment, or suffering it to be entered, or submitting to suit, and thus indirectly doing through the Sheriff what they could not do by their direct action."

But it is contended by counsel for appellant that the city is precluded from setting up the invalidity of the mortgage to

Aram, Belden, and Reed, by the proceedings on the foreclosure. That inasmuch as the city was a party to those proceedings, duly served with process, and had an opportunity to attack the validity of the mortgage, but failed to do so, its validity has become *res adjudicata,* and the respondents are estopped by the decree of foreclosure from further question upon that point. In aid of this theory counsel invokes the general principle announced by Chancellor Kent in *La Guen* v. *Gouveneur et al.,* 1 John. Ca. 436, to the effect that : " The judgment or decree of a Court possessing competent jurisdiction is not only final as to the subject matter thereby determined, but also as to every other matter which the parties might litigate in the cause, and which they might have decided." The soundness of this general doctrine, that a party cannot litigate his rights by piecemeal, is not doubted by us ; but it does not reach the real question involved in this case. It is obvious that the Ayuntamiento, being merely the agents of the pueblo, in the language of Mr. Justice Baldwin, " acting under defined and expressly limited powers," could not bind the property held in trust by them for community purposes by any act not strictly within those powers, either by way of contract, or by the mere sufferance of judicial proceedings. Were such the case, the law of corporate power would be made subservient to the adversary will of those in whose hands its temporary·exercise is placed. The subsequent judicial proceedings imparted no sanctity to the transaction, nor added thereto any validity in law which it did not previously possess. Whatever right or interest the mortgage created and vested in Aram, Belden, and Reed, the decree of foreclosure operated upon and subjected to the payment of their debt, but nothing more. If the pueblo's interest in the land was unaffected by the mortgage, and nothing passed, it was equally unaffected by the decree and subsequent sale. Parties dealing with the authorities of a municipal corporation are chargeable with full knowledge of their powers, and act at their peril. If the authorities transcend their powers, the act is a nullity, by which the municipality are as much unaffected as if it were the act of a

stranger, and it cannot be transformed into a validity except by the will of the sovereign. In all such cases there is involved only a question of power, which lies at the foundation, and if that fails the superstructure must fall with it. We hold, therefore, that all the proceedings, up to and including the Sheriff's deed to Branham and White, were utterly void, and that the interest of the pueblo, and its successor, the city, in the lands in question, were wholly unaffected thereby.

II. We now come to the consideration of the question as to what rights, if any, the trustees, Branham and White, acquired as against the city by virtue of the contract of the 12th of June, 1851, executed by and between them of the one part and the Mayor of the city of the other part. That contract, so far as its legal effect upon the title to the pueblo lands is concerned, is a contract of confirmation and release. In terms it confirms unto Branham and White all the rights and interests in said lands which they acquired by their purchase at the Sheriff's sale, and releases unto them all the right and title which the city then had or might afterwards have therein. Aside from all questions of power in the city government to make the contract, it is ineffectual so far as it attempts to confirm unto Branham and White the rights and interests which they acquired at the Sheriff's sale, for the obvious reason that there was no estate in them upon which the confirmation could act. *Qui confirmat nihil dat.* Confirmation may make good a voidable or defeasible estate, but cannot operate upon or aid an estate which is void in law, but only "confirms its infirmity." *Confirmatio est nulla, ubi donum precedens est invalidum, et ubi donatio nulla est, nec valebit confirmatio.* The only exception to this rule is where the confirmation is the act of sovereign will. (Comyn's Digest, Vol. 3, p. 139 ; D. I. p. 140 ; *Blessing* v. *House,* 3 Gill and John. 290.) It was upon this view that the Act of 1858, confirming the so-called " Van Ness Ordinance" was passed, and the validity of that ordinance upheld in *Hart* v. *Burnett.*

For much the same reasons, that part of the contract in which the city authorities attempt to release the title of the

city to Branham and White is ineffectual. There was no privity between the city on the one hand and Branham and White on the other; nor had the latter, as we have already seen, any estate or interest whatever in the land, nor had they the possession. There was, therefore, no estate to support the release, or upon which it could operate. "So a release to him who has no estate or right is void, though there may be a privity between them" (which is not the case here); "as, if a tenant in fee makes a feoffment, and afterwards the lord releases to the feoffer, his seigniory is not extinct," (Comyn's Digest, Vol. 7, p. 222,) because, at the time the release was made, the releasee, having parted with his estate by enfeoffing another, had no estate to support the release. So a mere release, unless the releasee is in possession, is void. (*Bennett* v. *Irwin*, 3 John. 363.) Under the contract in question, Branham and White occupy the position of confirmees and releasees only. The instrument contains no terms of grant, and they acquired thereby no new or further interest or estate in the land, conceding, as claimed by counsel for appellants, that the city authorities, by virtue of the provisions of the Act incorporating the city, acquired power of absolute disposition over the pueblo lands. Their rights to the lands were, in law, unaffected by the contract of the 12th of June, 1851, and remained the same after the execution of that instrument as they were before. Whether the city government acquired, by the Act of incorporation, greater power of disposition over the pueblo lands lying outside of the city limits than was possessed by its predecessor, the Ayuntamiento—a question which has been ably argued by counsel upon both sides—becomes immaterial in the view which we have taken of the case.

III. Failing of any relief upon the contract of the 12th of June, 1851, plaintiffs next ask that the Sheriff's sale and deed may be held for naught, and the satisfaction of the judgment against the city and in favor of Aram, Belden, and Reed, may be set aside, and that they may be subrogated to all the rights of Aram, Belden, and Reed, with leave to proceed, by execution or otherwise, to collect the judgment.

According to Bouvier, there are three kinds of subrogation: First—that made by the owner of a thing of his own free will; as, for example, when he voluntarily assigns it. Second—that which arises in consequence of the law, even without the consent of the owner; as, for example, when a man pays a debt which could not be properly called his own, but which, nevertheless, it was his interest to pay, or which he might have been compelled to pay for another, the law subrogates him to all the rights of the creditor. Third—that which arises by the act of law, joined to the act of the debtor; as for example, when the debtor borrows money expressly to pay off his debt and with the intention of substituting the lender in the place of the old creditor. It is not easy to perceive how the present case can be brought within either of these definitions.

Up to the time the plaintiffs purchased at the Sheriff's sale, and until the 12th day of June, 1851, about one month after the sale, there had been no treaty or negotiation between them and the city touching the foreclosure sale. There was, so far as appears from the complaint, no understanding between them and the city as to the purchase about to be made, nor were any representations whatever made by the city to induce them to purchase. On the contrary, they acted, so far as appears, entirely upon their own judgment, uninfluenced by any one. They were not asked to purchase by the city or any one else, and no promises were made to them in the way of inducement. They stand, therefore, in the attitude of naked purchasers at a judicial sale.

In the case of *Laws* v. *Thompson,* 4 Jones, N. C. 104, it was held that a purchaser at Sheriff's sale who acquired a defective title has no right to take the place of the creditor. In Maryland, it is held that Chancery sales are made subject to all incumbrances and *defects,* and the rule of *caveat emptor* applies. In the case of "*The Monte Allegre,*" 9 Wheat. 615, the petitioner claimed to have refunded to him the purchase price of a quantity of tobacco, (which he had purchased at a judicial sale,) because it was rotten and worthless when he bought it, and the defect was unknown to him at the time he

purchased.   The money which he had paid for the tobacco was still in the hands of the Court and undistributed; nevertheless, the relief was denied, the Court holding "that generally in all judicial sales the rule *caveat emptor* must necessarily apply from the nature of the transaction."   In Arkansas, debts contracted by a steamboat for work, supplies, and materials furnished, are made by statute a lien on the boat to the exclusion of certain other enumerated claims; yet it was held in *White* v. *Levy*, 5 Eng. 411, that where a party loaned money to the boat, which was borrowed and actually used for the purpose of paying off such preferred debts, the lender was not entitled to be substituted to the rights of the parties whose debts had been thus paid.   And in *Gadsden* v. *Brown*, Spear's Chan. 37, it was broadly declared that the doctrine of subrogation only applies to the case of a payment by a person previously holden for the debt.   In *Sanford* v. *McLeane*, 3 Paige, 122, the Court said: " It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a Court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect.   In other cases, the demand of a creditor which is paid with the money of a third party, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished. Such is also the rule of the civil law, although by that law a surety paying the debt is subrogated to the rights of the creditor *ipso facto*."

Against the plaintiffs' claim to be reimbursed the amount paid by them at the Sheriff's sale, by reason of the failure of the title which they purchased, and their right to maintain this, an independent action therefor, the case of *Boggs* v. *Hargrave*, 16 Cal. 562, seems to be conclusive.

Judgment affirmed.

Mr. Justice RHODES, having been interested in the matters involved, did not sit on the trial of this case.