[No. 13411. In Bank. — January 1, 1890.]

# THE SPRING VALLEY WATER WORKS, RESPONDENT, v. THE CITY AND COUNTY OF SAN FRANCISCO ET AL., APPELLANTS.

WATER RATES — POWER OF SUPERVISORS — CONSTITUTIONAL LIMITS — JURISDICTION OF SUPERIOR COURT. — Under article 14 of the constitution, the use of water for sale is a public use, and the price at which it shall be sold is a matter within the power of the board of supervisors to determine; and if they have fairly investigated and exercised their discretion in fixing the rates, the courts have no right to interfere on the sole ground that, in the judgment of the court, the rates fixed are not reasonable. To justify an interference by the courts, there must be. actual fraud in fixing the rates, or they must be so palpably and grossly unreasonable and unjust as to amount to the same thing. But the power of regulating rates is not a power of confiscation, or to take the property of the water company without just compensation; and whether the power of the supervisors to fix rates be judicial, legislative, or administrative, it is not above the control of the courts, if it is arbitrarily exercised, without a fair investigation, and the rates are so fixed as to render it impossible to furnish the water without loss, so that their pretended action amounts to a palpable fraud, which must certainly work injustice.

ID. — CONSTRUCTION OF CONSTITUTION — REASONABLE AND JUST RATES. — When the constitution provides for the fixing of rates, or compensation for the use of water, it means reasonable rates and just compensation; and to fix rates not reasonable, or compensation not just, is a plain violation of the duty of the board of supervisors. They have no right to fix the rates arbitrarily without investigation, or without the exercise of judgment and discretion in determining what is a fair and reasonable compensation.

ID. — SETTING ASIDE VOID ORDINANCE — DIRECTING NEW ORDINANCE. — The complaint in this action held sufficient to sustain a judgment of the superior court setting aside and declaring void an ordinance of the board of supervisors of the city and county of San Francisco fixing water rates

to be charged for water to be furnished to said city and its inhabitants for the year commencing July 1, 1889, and enjoining its enforcement, and directing the board of supervisors to proceed forthwith to fix said rates and compensation as provided by the constitution. (THORNTON, J., dissenting.)

ID. — PARTIES — MAYOR. — The mayor need not be joined as a party in an action against the city and county of San Francisco and its board of supervisors to procure a judgment setting aside a void ordinance, and to compel the board to proceed to pass a new ordinance as required by the constitution.

ID. — MUNICIPAL CORPORATION — LEGISLATIVE POWER — INJUNCTION — JUDICIAL CONTROL. — The principle that the legislative power of a state is beyond the reach of interference from a court of equity, so that it cannot suppress or control its exercise by injunction, does not apply to a municipal corporation, which, although clothed to some extent with legislative and even political powers, is yet, in the exercise of all its powers, just as subject to the authority and control of courts of justice, to legal process, legal restraint, and legal correction, as any other body or person, natural or artificial.

ID. — NOTICE OF FIXING RATES — PROCURING OF INFORMATION. — The supervisors are not bound to give notice to a water company of its intention to fix water rates; but they are nevertheless in duty bound to make a proper effort to procure all necessary information to enable the board to act intelligently and fairly in fixing the rates, and a failure to do so may defeat its action.

ID. — PROVISION FOR WATER-METERS — VARIATION IN RATES. — An ordinance fixing water rates which gives every householder the option to require a meter upon his premises to be placed there by the water company, at its expense, and to pay for the water furnished at rates different from the house rate, is not for that reason invalid. It does not leave the rates indefinite or uncertain, and it is not unreasonable to require the water company to pay for the meter. The expense thereof cannot be imposed upon the consumer.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*George Flournoy, Flournoy & Mhoon,* and *W. W. Foote,* for Appellants.

The court has no jurisdiction of the subject of the action. The constitutional provisions (art. 14) invests the board of supervisors with full discretion to fix water rates, and is in itself complete, self-executing, and mandatory. (*Spring Valley Water Works* v. *San Francisco,*

61 Cal. 18; *Matter of Maguire,* 57 Cal. 609.)   The discretion of one agent charged with constitutional functions cannot be lawfully controlled by any other agent or department of the state government.   (*District of Columbia v. Waggoner,* 4 Mackey, 328; *State v. Clarke,* 54 Mo. 17; 14 Am. Rep. 471; *Goodnow v. Comm'rs of Ramsey Co.,* 12 Minn. 31; *Ex parte Chin Yan,* 60 Cal. 78; *City of Brooklyn v. Breslin,* 57 N. Y. 591; *Wisconsin v. Duluth,* 96 U. S. 383; Cooley's Constitutional Limitations, secs. 44, 45; Bishop's Written Laws, sec. 35; *Nesbitt v. Greenwich Board of Works,* L. R. 10 Q. B. 10; *Ex parte Kearney,* 7 Wheat. 38; *People v. Metzker,* 47 Cal. 524; *Berryman v. Perkins,* 55 Cal. 483; *Spring Valley Water Works v. Bryant,* 52 Cal. 133; *Spring Valley Water Works v. San Francisco,* 52 Cal. 111; *San Francisco Pioneer Wool Factory v. Brickwedel,* 60 Cal. 166; *Spring Valley Water Works v. Board of Supervisors,* 61 Cal. 3, 18; *Spring Valley Water Works v. Bartlett,* 63 Cal. 245; *Spring Valley Water Works v. Bartlett,* 8 Saw. 555; *Spring Valley Water Works v. Schottler,* 110 U. S. 347.)   The ordinance does not affect any rights of private property, the corporate franchise being subject to the exclusive control of the supervisors.   (2 Hare Am. Const. Law, 659; *Greenwood v. Freight Co.,* 105 U. S. 13; 1 Potter on Corporations, sec. 162.)   The mayor should have been joined as a party co-defendant with the supervisors.   (Story's Eq. Jur., sec. 1526.)

*George W. Chamberlain, Amicus Curiæ.*

The limits of jurisdiction conferred by the constitution are unalterably fixed.   (Curtis on Jurisdiction, 8, 9.) The courts cannot interfere with a special tribunal or municipal corporation clothed with constitutional or sovereign power, so long as it keeps within the limits of its jurisdiction, and is guilty of no fraud or corruption. (*Motz v. City of Detroit,* 18 Mich. 515, 516; *Mitchell v. Niles,* 59 Ind. 367; *Le Roy v. Mayor,* 20 Johns. 430; *People v. City of Brooklyn,* 23 Barb. 166; *Ex parte Mayor etc. of*

*Albany,* 23 Wend. 277; *Mooers* v. *Smedley,* 6 Johns. Ch. 28; *Commonwealth* v. *Wouch,* 44 Pa. St. 113; *Mayor etc.* v. *Meserole,* 26 Wend. 132; *Owners of Ground etc.* v. *Mayor etc.,* 15 Wend. 374; *Lyon* v. *City of Brooklyn,* 28 Barb. 609; *Mayor* v. *Roberts,* 34 Ind. 471; *City of Fort Wayne* v. *Cody,* 43 Ind. 197; *Ex parte Thompson,* 52 Ala. 101; *Riron* v. *Farn,* 24 Ark. 167, 168; *Wilson* v. *B. & P. R. R. Co.,* 5 Del. Ch. 543; *Wells* v. *Mayor of Atlanta,* 43 Ga. 78; *A., T. & S. F. R. R. Co.* v. *People,* 5 Col. 65; *English* v. *New Haven,* 32 Conn. 244, 245; *Dunham* v. *City of New Britain,* 55 Conn. 378; *Des Moines Gas Co.* v. *Des Moines,* 44 Iowa, 509; 24 Am. Rep. 756; *Taylor* v. *City of Carondelet,* 22 Mo. 112; *Brewster* v. *Davenport,* 51 Kan. 430· *Flint River Steamboat Co.* v. *Foster,* 5 Ga. 201; 48 Am. Dec. 248; *Mason* v. *City of Shawneetown,* 77 Ill. 537; *Stoudinger* v. *City of Newark,* 28 N. J. Eq. 107; *Fitzgerald* v. *Harms,* 92 Ill. 376, 377; *Carlton* v. *Salem,* 103 Mass. 141.) There are no allegations of fraud or corruption in this case to bring it within any exception to the rule. (*State* v. *Cinn. Gas Co.,* 18 Ohio St. 262; *State* v. *Gas Co.,* 37 Ohio St. 45.)

*William F. Herrin,* and *Garber, Boalt & Bishop,* for Respondent.

The superior court has jurisdiction in all cases in equity. (Const., art. 6, sec. 5.) Having jurisdiction, it has power to determine every question occurring in the case. (*Rhode Island* v. *Massachusetts,* 12 Pet. 718; *Wilcox* v. *Jackson,* 13 Pet. 511.) The power of the supervisors over water rates is subject to limitations. The rates must be reasonable and just, and fixed by honest judgment; and they have no power to take the property of the water company without just compensation, or without due process of law. (Const., art. 1, sec. 14; Const. U. S., amend. 5, 14.) Any serious interruption of common and necessary use is a "taking" within the constitution. (*Pumpelly* v. *Green Bay Co.,* 13 Wall. 166, 177, 179; *Sinnickson* v. *Johnson,* 17 N. J. L.

129; 34 Am. Dec. 184; *Gardner* v. *Newburgh*, 2 Johns. Ch. 162; 7 Am. Dec. 526, and note; *Wynehamer* v. *People*, 13 N. Y. 378, 386.) Arbitrarily interfering with the right of disposition of property is within the prohibition against taking property without compensation and without due process of law. (*Wynehamer* v. *People*, 13 N. Y. 378, 486, 487; *In re Parrott*, 1 Fed. Rep. 491; *Missouri* v. *Fisher*, 52 Mo. 174; *People* v. *Gillson*, 109 N. Y. 389.) The right to dispose of water at reasonable rates constitutes the only value of plaintiff's property. (*Philadelphia etc. R. R. Co.* v. *Bowers*, 4 Houst. 506, 534; *Spring Valley Water Works* v. *Bryant*, 52 Cal. 132, 140; *State Freight Tax Case*, 15 Wall. 232, 278.) The supervisors are bound to exercise an honest judgment in fixing rates. (*Spring Valley Water Works* v. *Schottler*, 110 U. S. 343.) The power to regulate does not include the power to destroy or confiscate property without just compensation or due process of law, or require service without reward. (*Stone* v. *Farmers' etc. Co.*, 116 U. S. 307; *Dow* v. *Beidelman*, 125 U. S. 680; *Georgia etc. Co.* v. *Smith*, 128 U. S. 174, 179; *Chicago etc. R. R. Co.* v. *Becker*, 35 Fed. Rep. 883; *Chicago etc. R. R. Co.* v. *Day*, 35 Fed. Rep. 866; *Pensacola etc. R. R. Co.* v. *Florida*, 5 South. Rep. 833.) Power to regulate cannot be turned into a power to prohibit or destroy. (Cooley on Taxation, 598; *Caldwell* v. *Lincoln*, 19 Neb. 569.) The power to regulate charges for the use of property affected with a public interest can be validly exercised only by prescribing reasonable rates. (*Illinois etc. Co.* v. *People*, 95 Ill. 313, 315; *Keokuk etc. Co.* v. *Keokuk*, 45 Iowa, 196, 207; *Redstar etc. Co.* v. *Jersey City*, 45 N. J. L. 248; *State* v. *Cincinnati Gas Light etc. Co.*, 18 Ohio St. 298, 301, 302.) Rates must be compensatory under a proper construction of the constitution. The word "or," in the grant of power to provide "rates or compensation," should be construed as definitive, and not as alternative. (*Blemer* v. *People*, 76 Ill. 265.) The constitution merely

substitutes the board of supervisors for the board of commissioners who were to fix "reasonable rates" under the act of 1858. (*Spring Valley Water Works* v. *Schottler,* 110 U. S. 347, 351, 363; *Spring Valley Water Works* v. *San Francisco,* 61 Cal. 3, 7.) The right to "reasonable rates" was part of the contract between the plaintiff and the state, and an essential vested corporate right which could not be impaired, even under an express reserved power of amendment. (3 Wood on Railroad Law, 1696; 23 Cent. L. J. 102; *Holyoke Co.* v. *Lyman,* 15 Wall. 500; *Miller* v. *State,* 15 Wall. 478, 498; *Railroad Co.* v. *Maine,* 96 U. S. 499; *Shields* v. *Ohio,* 95 U. S. 319, 324; *Sinking Fund Cases,* 99 U. S. 700; *Commonwealth* v. *Essex,* 13 Gray, 239, 253; *Detroit* v. *Detroit etc. Co.,* 43 Mich. 146; *Albany City R. R. Co.* v. *Brownell,* 24 N. Y. 345.) The act of March 7, 1881, confirms plaintiff's right to reasonable rates under the act of 1858, by requiring *data* to be furnished. It is clear and undoubted law that police regulations, to be valid, must be reasonable. (Tiedeman on Limitations of Police Power, 194; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Toledo etc. R. R. Co.* v. *Jacksonville,* 67 Ill. 37, 40; 16 Am. Rep. 611; *Ohio etc. R. R. Co.* v. *Lachey,* 78 Ill. 55; 20 Am. Rep. 259; *In re Sam Kee,* 31 Fed. Rep. 680; *Daggett* v. *Hudson,* 43 Ohio St. 548; *Newton* v. *Belger,* 143 Mass. 598; *Delaware etc. R. R. Co.* v. *East Orange,* 41 N. J. L. 127, 133; *In re Tie Loy,* 26 Fed. Rep. 611.) What are reasonable regulations is a judicial question. (*Toledo etc. R. R. Co.* v. *Jacksonville,* 67 Ill. 37; 16 Am. Rep. 611; *Corrigan* v. *Gage,* 68 Mo. 544; *St. Louis* v. *Webber,* 44 Mo. 547; *People* v. *Gillson,* 109 N. Y. 389; *In re Jacobs,* 98 N. Y. 98, 107; Tiedeman on Limitations Police Power, sec. 144.) "Essential rights" or "privileges" or "indispensable franchises" of a corporation or natural person cannot be "destroyed or essentially modified" by a police regulation. (Wood on Railroad Law, 1704; *Thorpe* v. *Rutland etc. R. R. Co.,* 27 Vt. 140; *Sloan* v. *Pacific R. R. Co.,* 61 Mo. 31; 21 Am. Rep. 397; *Phila-*

*delphia etc. R. R. Co.* v. *Houston,* 4 Houst. 506; *Sullivan* v. *Oneida,* 61 Ill. 242; *Millett* v. *People,* 117 Ill. 294; 57 Am. Rep. 869; *Austin* v. *Murray,* 16 Pick. 126; *Watertown* v. *Mayo,* 109 Mass. 315; 12 Am. Rep. 694; *In re Jacobs,* 98 N. Y. 109; *People* v. *Marx,* 99 N. Y. 377; 52 Am. Rep. 34; *People* v. *Gillson,* 109 N. Y. 389; *Coe* v. *Schultz,* 47 Barb. 64, 67; *District of Columbia* v. *Saville,* 1 McAr. 581, 584.) Any unreasonable or oppressive ordinance which interferes with the liberty of the subject, or with rights of private property, will be declared void by the courts. (1 Dillon on Municipal Corporations, 3d ed., secs. 319, 323, 327, 328; *Ex parte Frank,* 52 Cal. 606, 609; *Ex parte Kearny,* 55 Cal. 212; *Clinton* v. *Phillips,* 58 Ill. 102; 11 Am. Rep. 52; *Tugman* v. *Chicago,* 78 Ill. 405; *Corrigan* v. *Gage,* 68 Mo. 541, 544; *Austin* v. *Murray,* 16 Pick. 125; *Pieri* v. *Shieldsboro,* 42 Miss. 493, 495; *Caldwell* v. *Lincoln,* 19 Neb. 569; *Mayor* v. *Radeke,* 49 Md. 217, 228, 229; *State* v. *Mayor,* 37 N. J. L. 348; *Kip* v. *Paterson,* 26 N. J. L. 298; *State* v. *Hightstown,* 45 N. J. L. 127; *State* v. *Jersey City,* 47 N. J. L. 286; *Delaware etc. R. R. Co.* v. *East Orange,* 41 N. J. L. 127, 133; *Dayton* v. *Quigley,* 29 N. J. Eq. 77; *Dunham* v. *Rochester,* 5 Cow. 462; *Mayor* v. *Winfield,* 8 Humph. 707; *Smith* v. *Mayor,* 3 Head, 245, 248; *Northern Liberties* v. *Northern Liberties Gas Co.,* 12 Pa. St. 318, 322, 323; *Clason* v. *Milwaukee,* 30 Wis. 316, 321; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Anderson* v. *Wellington,* 40 Kan. 173.) When power is given to a municipal corporation to legislate, without prescribing the mode of its exercise, an ordinance passed in pursuance of the power must be reasonable. (1 Dillon on Municipal Corporations, 3d ed., sec. 328.) The power to fix rates is judicial. (*Spring Valley Water Works* v. *Schottler,* 110 U. S. 352; *Sloane* v. *Pacific R. R. Co.,* 61 Mo. 24, 32; 4 Am. Rep. 397.) Any municipal action interfering with rights of property, or deciding upon and determining the rights of others, is an exercise of judicial or *quasi* judicial power. (*Del. etc. R. R. Co.* v. *Orange,* 41 N. J. L. 127, 133; *Dawes* v.

*Hightstown,* 45 N. J. L. 127, 129; *People* v. *Supervisors,* 10
Cal. 345; *Robinson* v. *Supervisors,* 16 Cal. 210; *People* v.
*Goldtree,* 44 Cal. 323; *People* v. *Hillhouse,* 1 Lans. 87; *People* v. *Commissioners,* 46 How. Pr. 227; *People* v. *Schenectady,* 35 Barb. 413; *Fall* v. *Paine,* 23 Cal. 303; *Murray* v.
*Supervisors,* 23 Cal. 493; *Damrell* v. *Supervisors,* 40 Cal.
155; *Tilden* v. *Sacramento Co.,* 41 Cal. 68; *Colusa Co.* v.
*De Jarnett,* 55 Cal. 373.)   In the exercise of judicial
power, notice and an opportunity to be heard are essential to its validity.   (*Black* v. *Black,* 4 Bradf. 205; *Rex* v.
*Glegg,* 8 Mod. 4; *State* v. *Savannah,* T. U. P. Charlt. 23;
*Woodruff* v. *Taylor,* 20 Vt. 65; *Fisher* v. *Keane,* L. R. 11
Ch. D. 353; *Hutchinson* v. *Lawrence,* 67 How. Pr. 38;
*Dawes* v. *Hightstown,* 45 N. J. L. 127, 129; *Scott* v. *Toledo,*
36 Fed. Rep. 385; *Remsen* v. *Wheeler,* 105 N. Y. 573;
*Stuart* v. *Palmer,* 74 N. Y. 183, 190; 30 Am. Rep. 289;
*Gatch* v. *Des Moines,* 63 Iowa, 718; 18 N. W. Rep. 310;
*Griswold College* v. *Davenport,* 65 Iowa, 633; *Patten* v.
*Green,* 13 Cal. 325; *Henkle* v. *Keota,* 68 Iowa, 334; *State*
v. *Morristown,* 33 N. J. L. 58; *State* v. *Plainfield,* 38 N. J.
L. 97; *Curtis* v. *Sacramento,* 64 Cal. 105, and cases cited;
*Flint River etc. Co.* v. *Foster,* 5 Ga. 194; 48 Am. Dec. 270,
and note; *McVeigh* v. *United States,* 11 Wall. 267; *Windsor* v. *McVeigh,* 98 U. S. 277; *Pennoyer* v. *Neff,* 95 U. S.
733; *Settlemier* v. *Sullivan,* 97 U. S. 444; *Gilmore* v. *Sapp,*
100 Ill. 297; *Foster* v. *Justices,* 9 Ga. 188; *Philadelphia* v.
*Miller,* 49 Pa. St. 440–448; *New Jersey etc. Co.* v. *Hall,* 17
N. J. L. 337; *Vail* v. *Morris etc. R. R. Co.,* 21 N. J. L. 189,
191; *Coster* v. *New Jersey R. R. Co.,* 23 N. J. L. 227, 233;
*State* v. *Newark,* 25 N. J. L. 411.)   The fixing of rates
without notice and a hearing is " opposed to the first
principles of law and justice."   (*Warwick Canal Co.* v.
*Birmingham Canal,* L. R. 5 Ex. D. 1.)   Notice and opportunity to be heard are essential elements of "due
process of law," whatever the nature of the power exercised.   (Cooley's Constitutional Limitations, sec. 356;
Sedgwick on Statutory and Constitutional Law, 2d ed.,

475; *Flint River etc. Co.* v. *Foster*, 5 Ga. 194; 48 Am. Dec. 276, note; *Ex parte Ah Fook*, 49 Cal. 406; *Ieck* v. *Anderson*, 57 Cal. 251; 40 Am. Rep. 115; *Hutson* v. *Woodbridge Protection District*, 79 Cal. 90; *Pennoyer* v. *Neff*, 95 U. S. 733; *Settlemeir* v. *Sullivan*, 97 U. S. 444; *Hagar* v. *Reclamation District*, 111 U. S. 701; *Ex parte Wall*, 107 U. S. 265; *Kennard* v. *Louisiana*, 92 U. S. 480; *Zeigler* v. *South etc. R. R. Co.*, 58 Ala. 594; *Wilburn* v. *McCalley*, 63 Ala. 436; *Parsons* v. *Russell*, 11 Mich. 113; 83 Am. Dec. 728; *Mason* v. *Messenger*, 17 Iowa, 267; *Varden* v. *Mount*, 78 Ky. 86; 39 Am. Rep. 208; *Clark* v. *Mitchell*, 64 Mo. 564; *People* v. *Supervisors*, 70 N. Y. 228; *Stuart* v. *Palmer*, 74 N. Y. 183, 190; 30 Am. Rep. 289; *Overing* v. *Foote*, 65 N. Y. 269; *The J. W. French*, 5 Hughes, 429; *Garvin* v. *Davisson*, 114 Ind. 429; *San Mateo Co.* v. *Southern Pacific R. R. Co.*, 8 Saw. 238, and other cases cited in the note to *Flint River etc. Co.* v. *Foster*, 48 Am. Dec. 269, 374.)   The board of supervisors being merely substituted for the arbiters provided for by the act of 1858, notice and opportunity to be heard are essential to a valid arbitration of plaintiff's rights. (Morse on Arbitration, 534, 535; *Curtis* v. *Sacramento*, 64 Cal. 102, and cases there cited; *Paschal* v. *Terry*, W. Kelynge, 132; *Plews* v. *Middleton*, 6 Q. B. 845, 850; *Dormoy* v. *Knower*, 55 Iowa, 722; *Dreyfous* v. *Hart*, 36 La. Ann. 929; *Sisk* v. *Garey*, 27 Md. 401, 419; *Republic Bank* v. *Darragh*, 30 Hun, 29; *Cleveland* v. *Hedley*, 5 R. I. 163; *Wood* v. *Helme*, 14 R. I. 325, 329.)   And it is equally fatal to an award for the arbitrators to refuse to hear competent and material testimony offered by either party pertinent to the subject-matter of the arbitration.  (Morse on Arbitration, 536; *Phipps* v. *Ingram*, 3 Dowl. Pr. 669; *Nickalls* v. *Warren*, 6 Q. B. 615; *Dreyfous* v. *Hart*, 36 La. Ann. 929; *Van Cortlandt* v. *Underhill*, 17 Johns. 405, 409; *Flaharty* v. *Beatty*, 22 W. Va. 698.)   When an arbitrator is the agent of one of the parties, an award made by him without notice to the other party is illegal, and will be set aside

in chancery. (*Maysville etc. Turnpike Co.* v. *Waters,* 7 Dana, 62, 67.) The arbitrary action of the supervisors without the exercise of an honest judgment is a legal fraud, and amounts to a denial of due process of law. (*Spring Valley Water Works* v. *Schottler,* 110 U. S. 354; *Johnson* v. *Milwaukee,* 40 Wis. 326; *Miller* v. *Humphrey,* 24 Mich. 175; *New Jersey R. R. Co.* v. *Suydam,* 17 N. J. L. 25; *Windsor* v. *McVeigh,* 93 U. S. 278, 282, 283; *United States* v. *Walker,* 109 U. S. 267; *People* v. *Marx,* 99 N. Y. 377; 52 Am. Rep. 34.) A legal fraud need not be charged as such *in totidem verbis* if the facts averred show fraud as a conclusion of law. (*Kennedy* v. *Kennedy,* 2 Ala. 572, 604; *Massina* v. *Goldthwaite,* 35 Tex. 125; *Chenery* v. *Palmer,* 6 Cal. 119; *Kent* v. *Snyder,* 30 Cal. 674; *Story* v. *N. & W. R. R. Co.,* 24 Conn. 94, 113.) A fraudulent ordinance will be declared void. (*State* v. *Cincinnati Gas Light Co.,* 18 Ohio St. 298; *Carter* v. *Chicago,* 57 Ill. 283, 286–289; *Davis* v. *New York,* 1 Duer, 451.) A breach of duty is a constructive fraud. (*Baker* v. *Humphrey,* 101 U. S. 500; Anderson's Dict. of Law, 475; *Kennedy* v. *Kennedy,* 2 Ala. 572, 604.) The ordinance is void because it does not fix rates with certainty, but gives consumers an option of different rates. (*San Francisco etc. Factory* v. *Brickwedel,* 60 Cal. 166.) And also because it requires plaintiff to pay for and set up meters on demand of consumers. (*Sheffield Water Works Co.* v. *Bingham,* L. R. 25 Ch. D. 443; *Millet* v. *People,* 117 Ill. 294; *Louisville & N. R. R. Co.* v. *Baldwin,* 5 South. Rep. 311.) Under section 1, article 14, of the constitution, a mandatory injunction lies to compel the fixing of compensatory rates. (Story's Eq. Jur., sec. 861; *Wells etc. Co.* v. *North etc. R. R. Co.,* 23 Fed. Rep. 468–481.) Equity has jurisdiction to prevent municipal and other bodies from abusing their powers and invading private rights. (*Davis* v. *New York,* 1 Duer, 451; *Place* v. *Providence,* 12 R. I. 1; *People* v. *Canal Board,* 55 N. Y. 393; *Russel* v. *Edson,* 51 N. Y. Sup. Ct. 227; *Miller* v. *Humphrey,* 24 Mich. 175.)

It is well settled that where an ordinance is utterly void, a bill may be maintained for an injunction to restrain its enforcement and all proceedings under it. (2 High on Injunctions, 2d ed., sec. 1247; 1 Dillon on Municipal Corporations, 3d ed., sec. 420; *Carter* v. *Chicago,* 57 Ill. 283, 286; *Mitchell* v. *Wiles,* 59 Ind. 364; *Mayor* v. *Gill,* 31 Md. 375; *Mayor* v. *Radecke,* 49 Md. 217, 231; *Dayton* v. *Quigley,* 29 N. J. Eq. 77, and note; *People* v. *Mayor,* 32 Barb. 35; *Morse* v. *Hoffman,* 2 Cin. Rep. 453; *Scott* v. *Toledo,* 36 Fed. Rep. 385; *Harper's Appeal,* 109 Pa. St. 9.) That a suit in equity for an injunction will lie in this case has been determined in an analogous case. (*Chicago etc. R. R. Co.* v. *Day,* 35 Fed. Rep. 366.) The court may, and should, in this case settle the principles upon which rates are to be fixed as prayed for in the complaint. (*Southwestern R. R. Co.* v. *Wright,* 68 Ga. 311.)

WORKS, J.— This action is brought to set aside and declare void an ordinance of the board of supervisors of the city and county of San Francisco, fixing water rates to be charged for water to be furnished to said city and its inhabitants for the year commencing July 1, 1889.

The complaint, after alleging the plaintiff's corporate existence, and its object and purpose, viz., to furnish water to said city and county, and other preliminary and technical matters, avers that it has for the purpose mentioned "constructed aqueducts, and pumping and other works, and laid many miles of water-pipe for distributing water to its consumers; and that its aforesaid lands, water rights, works, buildings, and improvements necessary to enable it to fulfill the said purposes of its incorporation are of very great value, to wit, of a value exceeding twenty-five million dollars"; that it has projected and has now in course of construction large additions to its works, necessary to meet the demands of said city and its inhabitants, and in order to meet the wants of said city and its inhabitants, and "to meet the ex-

penses and pay the cost of the said additions to its works and improvements, it will be necessary for the plaintiff to lay out and expend, during the year ending June 30, 1890, very large sums of money, amounting in the aggregate to more than one million five hundred thousand dollars"; that for these purposes it has borrowed large sums of money, amounting in the aggregate to more than nine million six hundred thousand dollars, and has an aggregate interest-bearing indebtedness, secured by mortgage on its property, of nine million dollars; that the interest which will accrue and have to be paid during the year ending June 30, 1890, will amount in the aggregate to four hundred and ninety-eight thousand dollars; that the operating expenses of the plaintiff's business for said year will amount to three hundred and ninety thousand dollars, and the taxes to be paid by it will amount to seventy thousand six hundred dollars; that its capital stock is ten million dollars, is divided into one hundred thousand shares, and held by more than eleven hundred share-holders, and that the holders of said stock are reasonably entitled to receive in dividends upon their said stock not less than seven per cent per annum upon the par value of said stock; that the plaintiff is entitled to receive a reasonable and just compensation for the services rendered, "and that if so fixed its aggregate annual income from such rates would be sufficient to pay the interest on its indebtedness, the taxes upon its property, and its operating and other fixed expenses, and to pay dividends to its stockholders, amounting to at least seven per cent upon the par value of their stock, and that to this end it was and is entitled to have its rates for the year commencing July 1, 1889, and ending June 30, 1890, so fixed and established that its gross income for said year will amount to at least one million six hundred and seventy thousand dollars"; that, as required by law, the plaintiff furnished said board of supervisors, and filed with the clerk thereof, "a

detailed statement, verified by the oath of the president and secretary of the plaintiff, showing the name of each water-rate payer, his or her place of residence, the amount paid by each such water-rate payer during the year preceding the date of such statement, and also showing all revenue derived by said plaintiff from all sources during said year, and an itemized statement of expenditures made by plaintiff for supplying water during said time; that from said statement it appeared, and so the fact is, that the receipts and expenditures made by the plaintiff from furnishing and for supplying water during said time were as follows, viz.: Receipts — From water rates, $1,421,751.39; from other sources, $12,498.25. Total, $1,434,249.64. Disbursements — For operating expenses, $361,653.65; for interest, $443,257.85; for taxes, $70,624,40; for dividends, $600,000. Total, $1,475,535.90. Balance, expenditures over receipts, $41,286.26."

The complaint further alleges "that said board of supervisors did not during said month of February, 1889, so fix and prescribe said rates for said year, and have not at any time lawfully or duly fixed or prescribed any rates whatever for supplying fresh water to said city and .county and its inhabitants during said year; that on the twenty-eighth day of February, 1889, the said board of supervisors assumed and pretended to pass a certain pretended ordinance or order, purporting to fix the maximum rates to be charged for furnishing fresh water to said city and county and its inhabitants for the said year commencing July 1, 1889, and ending June 30, 1890, a true and full copy of which said ordinance or order is hereto annexed, marked Exhibit A, and made a part of its complaint.

"That the said ordinance or order purports to fix the rates to be charged for supplying fresh water to said city and county and its inhabitants for said year; but that the same is, in fact, null and void, and of no effect, and

that the rates pretended thereby to be fixed are wholly illegal and unauthorized; that the said ordinance or order was passed, or pretended to be passed, without any notice or opportunity to be heard against it on the part of the plaintiff or other person interested; that said order was first introduced in said board of supervisors, without any previous notice to plaintiff, or hearing accorded to plaintiff, with reference to the subject-matter thereof, at a meeting of said board of supervisors held on the twenty-first day of February, A. D. 1889, and was thereafter called up for final passage at a meeting of said board of supervisors held on the twenty-eighth day of February, A. D. 1889; that the first information which the plaintiff received thereof was through the public newspapers, and on said twenty-first day of February, and that the first opportunity which the plaintiff had to object to said order, or to offer to introduce evidence before said board of supervisors, showing that said order was unreasonable and unjust, was at said meeting of February 28, A. D. 1889; that at said meeting, and at the first opportunity, and before the passage of said order, the plaintiff offered to produce and introduce evidence and testimony before said board, showing that said order was unreasonable and unjust, in that it would not allow the plaintiff to collect sufficient revenue to pay its necessary operating expenses, interest on its indebtedness, and taxes, but that the said board of supervisors would not, and did not, allow the plaintiff to introduce, and refused to hear, evidence offered by the said plaintiff to show that the said ordinance or order was, and that the rates pretended to be fixed thereby were, unreasonable, unjust, and oppressive, and refused to allow, and did not allow, any evidence whatever to be introduced respecting the reasonableness and justice of the said ordinance or order, and of the rates purported to be fixed thereby, but immediately passed and adopted said order, without giving the plaintiff any opportunity to be heard

whatever; that the rates purporting to be fixed by said ordinance or order were fixed arbitrarily, at random, and by mere guess-work, without any consideration of or regard to the right of plaintiff to a reasonable compensation for supplying water to the said city and county and its inhabitants, or to a reasonable income, or any income, upon its investment, and without any consideration of or regard to the value of the plaintiff's works and property, or the amount of its interest-bearing indebtedness, and the annual interest charge thereon, or its operating expenses, or the amount of taxes which it would be required to pay, or the right of the plaintiff's stockholders to reasonable, or any, dividends upon their stock, and without any reference to or consideration of the actual cost of supplying said water, but in total disregard of all such matters; and that in the passage, or pretended passage, of said ordinance or order, the said board of supervisors acted wholly without jurisdiction, power, or authority, and in excess of their lawful jurisdiction, power, or authority.

"That the said ordinance or order is, and the rates purporting to be prescribed and fixed thereby are, grossly unjust, unreasonable, and oppressive; that said rates do not permit of nor provide for a just or fair or reasonable compensation for the water to be supplied during said year by this plaintiff to said city and county and the inhabitants thereof; and that if said ordinance or order is enforced, and if the plaintiff is prevented from charging and collecting any other or greater rates than those prescribed, its gross income from the said rates for the year commencing July 1, 1889, and ending June 30, 1890, will not, and cannot possibly, exceed the sum of seven hundred and fifty thousand dollars; and it will be wholly insufficient to pay the interest on the plaintiff's indebtedness, its operating expenses, and taxes; and not only will not and cannot yield any dividend to its stockholders, but will render it necessary to levy heavy assess-

ments upon said stockholders to pay said interest, expenses, and taxes."

It is further averred that the defendants are about to enforce said ordinance; that its passage has already impaired the plaintiff's credit and depreciated the value of its property; and if enforced, it will greatly impair, if not entirely destroy, the plaintiff's credit as well as the value of its property and capital stock, and prevent it from constructing and completing the work necessary to supply water to the city and its inhabitants; and that the ordinance operates, and will operate, to take away the plaintiff's property without due process of law, and deprive the plaintiff of the equal protection of the laws, and that the plaintiff has no adequate remedy at law.    There are other allegations in the complaint, but they need not be particularly noticed.

The prayer of the complaint is as follows:—

"Wherefore the plaintiff prays the judgment and decree of this court,—

"1. That the said pretended ordinance or order of the board of supervisors of said city and county is utterly null and void, and of no effect in law.

"2. That the plaintiff is entitled to have the rates for supplying fresh water to said city and county and its inhabitants for the year commencing July 1, 1889, and ending June 30, 1890, and for other years, so fixed that they will, in the aggregate, afford a reasonable and just compensation for the service rendered, and will yield a sufficient annual income to pay the interest on its indebtedness, its running expenses and taxes, and to the plaintiff's stockholders a dividend of not less than seven per cent per annum upon the face value of their stock.

"3. That the court issue its mandatory injunction or other peremptory process requiring the said board of supervisors forthwith to fix the rates for supplying water to said city and county and its inhabitants for the year commencing July 1, 1889, and ending June 30, 1890, in

accordance with the foregoing principles; to give plaintiff and all other persons interested due notice and an opportunity to be heard before the said board prior to the final adoption of any order fixing such rates, and to allow the plaintiff and others interested to introduce evidence respecting the reasonableness and justice of such proposed order, and to make, by their counsel, such argument upon the subject as they may see fit.

" 4. That each and all of said defendants be personally enjoined from any attempt to enforce, or to cause to be enforced, the said pretended ordinance or order, or from bringing, or causing to be brought, any action or suit against the plaintiff in law or in equity, to enforce any forfeiture of the plaintiff's franchise or works, or for any other purpose, for any refusal or failure of the plaintiff to obey the said pretended ordinance or order, or to conform to the rates thereby prescribed, and from any attempt, directly or indirectly, to compel the plaintiff to furnish water at any other rates than those fixed by the board of supervisors in obedience to the decree and mandate of this court.

"5. That the plaintiff's rights in the premises be forever quieted against each and all of the defendants.

"6. That the plaintiff have such other and further relief as to the court may seem meet and conformable to equity and good conscience, together with the costs of this suit."

There was a demurrer to the complaint, which was overruled, and the defendants declining to answer, judgment was rendered in favor of the plaintiff that the rates and compensation " are grossly unreasonable, unjust, and oppressive, and amount to the taking of the property of the plaintiff for public use without just compensation and without due process of law "; that said ordinance " is outside and in excess of the jurisdiction of the board of supervisors as conferred by article 14, section 1, of the constitution of the state of Cali-

fornia, and not a compliance with the provisions of said article and section, and is, and ever has been, illegal, unauthorized and void." It was further decreed that the ordinance be set aside and vacated, that the defendants be enjoined from enforcing the same, and that they be enjoined from bringing any action against the plaintiff to enforce any forfeiture of its franchise and works on account of any past or future refusal to obey said pretended ordinance, or to conform to said rates, or any of them, quieting plaintiff's rights in the premises, and directing that the board of supervisors proceed forthwith to fix said rates and compensation as provided by the constitution.

The appellants, having seen fit to rest their case upon the facts as stated in the complaint, instead of answering and attempting to show that the board of supervisors had endeavored to comply with the provisions of the constitution by an honest and fair effort to ascertain and fix a fair and reasonable rate for water to be furnished, the only question for us to determine is, whether, under the allegations of the complaint, which are by the demurrer admitted to be true, the plaintiff is entitled to any relief. If so, the judgment must be affirmed.

The appellants take the broad ground that the constitution has conferred upon the board of supervisors the absolute and exclusive right to fix water rates, and that, under no circumstances, have the courts any jurisdiction to interfere with or control such authority; while the respondent contends that there is a limitation on the power of the board which compels the board to fix *reasonable* rates or compensation, and that whether the rates or compensation fixed by such board are *reasonable* or not the courts have the power and jurisdiction to determine.

The constitution, article 14, provides,—

" Sec. 1. The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental, or

distribution, is hereby declared to be a public use, and subject to the regulation and control of the state in the manner to be prescribed by law; *provided*, that the rates or compensation to be collected by any person, company, or corporation of this state for the use of water supplied to any city and county, or city or town, or the inhabitants thereof, shall be fixed, annually, by the board of supervisors, or city and county, or city or town council, or any governing body of such city and county, or city or town, by ordinance or otherwise, in the manner that other ordinances or legislative acts or resolutions are passed by such body, and shall continue in force for one year, and no longer. Such ordinances or resolutions shall be passed in the month of February of each year, and take effect on the first day of July thereafter. Any board or body failing to pass the necessary ordinances or resolutions fixing water rates, where necessary, within such time, shall be subject to peremptory process to compel action at the suit of any party interested, and shall be liable to such further processes and penalties as the legislature may prescribe. Any person, company, or corporation collecting water rates in any city and county, or city or town, in this state, otherwise than as so established, shall forfeit the franchises and water works of such person, company, or corporation of the city and county, or city or town, where the same are collected, for the public use."

" Sec. 2. The right to collect rates or compensation for the use of water supplied to any county, city and county, or town, or the inhabitants thereof, is a franchise, and cannot be exercised except by authority of and in the manner prescribed by law."

The first point made as to the jurisdiction of the court below is, that, conceding the complaint states a cause of action, no jurisdiction to hear and determine the question raised thereby is vested in the superior courts by the constitution or laws of this state. There is no force in

this contention.   If any cause of action is stated in the complaint, it is an equitable one, and of such cases superior courts are given jurisdiction in the broadest terms by the constitution of this state.   (Const., art. 6, sec. 5.)

We pass therefore to the only real question in the case, viz., whether there is any power on the part of any court, no matter how broad and comprehensive its grant of jurisdiction may be, to review, interfere with, or set aside the action of the board of supervisors, or whether the power and authority of such board is exclusive and beyond the reach of the courts under any and all circumstances.

It must be conceded in the outset that the use of water for sale is a public use, and that the price at which it shall be sold is a matter within the power of the board of supervisors to determine.   (*Munn* v. *Illinois,* 94 U. S. 113; *Spring Valley Water Works* v. *Schottler,* 110 U. S. 347.)   Indeed this is not controverted by the respondent. The constitution does not, in terms, confer upon the courts of the state any power or jurisdiction to control, supervise, or set aside any action of the board in respect to such rates.   It may also be conceded, for the purposes of this case, that when the board of supervisors have fairly investigated and exercised their discretion in fixing the rates, the courts have no right to interfere, on the sole ground that in the judgment of the court the rates thus fixed and determined are not reasonable.   That such is the case is attested by numerous authorities. (*Nisbitt* v. *Board of Works,* L. R. 10 Q. B. 10; *Davis* v. *Mayor of New York,* 1 Duer, 451–497; *Munn* v. *Illinois,* 94 U. S. 113; *Spring Valley Water Works* v. *Schottler,* 110 U. S. 347; *Chicago & N. W. R'y Co.* v. *Day,* 35 Fed. Rep. 866.)

But it seems to us that this complaint presents an entirely different question from this.   The whole gist of the complaint is, that the board of supervisors have *not* exercised their judgment or discretion in the matter;

that they have arbitrarily, without investigation, and without any exercise of judgment or discretion, fixed these rates without any reference to what they should be, without reference either to the expense to the plaintiff necessary to furnish the water, or to what is a fair and reasonable compensation therefor; that the rates are so fixed as to render it impossible to furnish the water without loss, and so low as to amount to a practical confiscation of the plaintiff's property. If this be true, and the demurrer admits it, a party whose property is thus jeopardized should not be without a remedy. If the action of the board of supervisors was taken as the complaint alleges, they have not in any sense complied with the requirements of the constitution, and their pretended action was a palpable fraud which might result injuriously either to the plaintiff or the city and its inhabitants, and would almost certainly work injustice to one or the other. The constitution does not contemplate any such mode of fixing rates. It is not a matter of guess-work or an arbitrary fixing of rates without reference to the rights of the water company or the public. When the constitution provides for the fixing of rates or compensation, it means *reasonable* rates and *just* compensation. To fix *such* rates and compensation is the duty and within the jurisdiction of the board. To fix rates not reasonable or compensation not just is a plain violation of its duty. But the courts cannot, after the board has fully and fairly investigated and acted, by fixing what it believes to be reasonable rates, step in and say its action shall be set aside and nullified because the courts, upon a similar investigation, have come to a different conclusion as to the reasonableness of the rates fixed. There must be actual fraud in fixing the rates, or they must be so palpably and grossly unreasonable and unjust as to amount to the same thing.

The right of the plaintiff to dispose of the water collected in its reservoirs, at reasonable rates, is the only

value it has, and is the only thing that can bring the plaintiff any return for the money expended for reservoirs for its storage, and pipes for its distribution. Not only reservoirs, pipes, and other works and improvements necessary to carry out the objects of its incorporation, but the water itself, is *property* which cannot be taken without just compensation.

The fact that the right to store and dispose of the water is a public use, subject to the control of the state, and that its regulation is provided for by the constitution of this state, does not affect the question. Regulation, as provided for in the constitution, does not mean confiscation, or a taking without just compensation. If it does, then our constitution is clearly in violation of the constitution of the United States, which provides that this shall not be done.

The ground taken by the appellant is, that the fixing of rates is a *legislative* act; that by the terms of the constitution the board of supervisors are made a part of the legislative department of the state government, and exclusive power given to them which cannot be encroached upon by the courts. In other words, the board of supervisors, for the purpose of fixing these water rates, is a part of one of the co-ordinate and independent departments of the state government, and, as such, beyond and independent of any control by the judicial department.

This court has held that the fixing of water rates is a *legislative* act, at least to the extent that the action of the proper bodies clothed with such power cannot be controlled by writs which can issue only for the purpose of controlling *judicial* action. (*Spring Valley Water Works* v. *Bryant*, 52 Cal. 132; *Spring Valley Water Works* v. *City and County of San Francisco*, 52 Cal. 111; *Spring Valley Water Works* v. *Bartlett*, 63 Cal. 245.) There are other cases holding the act to be legislative, but whether it is judicial, legislative, or administrative, is immaterial. Let it be which it may, it is not above the control of the

courts in proper cases. It has also been held that where a power is vested in an officer of the state involving the exercise of discretion and judgment on his part, such discretion and judgment cannot be controlled by the courts by *mandamus*. (*Berryman* v. *Perkins*, 55 Cal. 483.)

The right and jurisdiction in this respect is fully and accurately stated in *Davis* v. *Mayor etc. of New York*, 4 Duer, 451–497, as follows: "Notwithstanding these observations, the question still remains, Has this court, or any court of equity, the power to interfere with the legislative discretion of the common council of this city, or of any other municipal corporation? And to this question I at once reply, certainly not, if the term 'discretion' be properly limited and understood; and thus understood, I carry the proposition much further than the counsel who advanced it. This court has no right to interfere with and control the exercise, not merely of the legislative, but of any other discretionary, power, that the law has vested in the corporation of the city; and hence I deem it quite immaterial whether the resolution in favor of Jacob Sharp and his associates be termed a by-law, a grant, or contract, or whether the power exercised in passing it be legislative, judicial, or executive; for if the corporation had the power of granting at all the extraordinary privileges which the resolution confers, the propriety of exercising the power, and perhaps even the form of its exercise, rested entirely in its discretion. Nor is this all. A court of equity has no right to interfere with and control, in any case, the exercise of a discretionary power, no matter in whom it may be vested, — a corporate body or individuals, the aldermen of a city, the directors of a bank, a trustee, executor, or guardian; and I add that the meaning and principle of the rule, and the limitations to which it is subject, are, in all the cases to which it applies, exactly the same. The meaning and principle of the rule are, that the court will not substitute its own judgment for

that of the party in whom the discretion is vested, and thus assume to itself a power which the law had given to another; and the limitations to which it is subject are, that the discretion must be exercised, within its proper limits, for the purposes for which it was given, and from the motives by which alone those who gave the discretion intended that its exercise should be governed."

We are not inclined to the doctrine asserted by the appellant in this case, that every subordinate body of officers to whom the legislature delegates what may be regarded as legislative power thereby becomes a part of the legislative branch of the state government, and beyond judicial control.

In the case of *Davis* v. *Mayor etc. of New York, supra,* it is further said:—

"It is this discretion, therefore, that I adopt, and for the purpose of this opinion I shall treat the resolution as an ordinance or by-law, and its reconsideration and adoption as properly acts of legislation, in the fullest sense in which the term 'legislation' can be justly applied to the acts of a corporate body.

"Making these concessions, the denial of the jurisdiction of this court amounts to this: that a court of equity of general jurisdiction has no power, in any case or for any purpose, to restrain the legislative action of a municipal corporation, nor in any manner to interfere with or control its legislative discretion, no matter to what subject the action may be directed, nor how manifest and gross the violation of law, even of the provisions of its own charter, that it may involve, and no matter by what motives of fear, partiality, or corruption its discretion may be governed, nor how extensive and irreparable the mischief that, in the particular case, may be certain to result to individuals or the public from its threatened exercise.

"If this be true as a proposition of law, then the in-

junction order of this court, from the want of juris-
diction manifest on its face, was wholly void. If the
proposition be not true, the order was valid, and should
have been obeyed.

"In reply to a question put by the court, it was ex-
pressly affirmed by one of the counsel that should the
common council attempt, by an ordinance, and from
motives manifestly corrupt, to convey, for a grossly in-
adequate or merely nominal consideration, all the cor-
porate property of the city, neither this nor any other
court would have power to suppress, by an injunction,
the meditated fraud, or when consummated, to rescind
the grant, or punish its authors, or divest them of its
fruits. There could be no remedy, we were told, but
from the force of public opinion, and the action of the
people at an ensuing election, and all this upon the
ground that neither the propriety nor the honesty of
the proceedings of a legislative body, nor, while they are
pending, even their legality, can ever be made the sub-
ject of judicial inquiry.

" This, it must be confessed, is a startling doctrine.
We all felt it to be so when announced, and I rejoice
that we are now able to say, with an entire conviction,
that, applied to a municipal corporation, it is just as
groundless in law as it seems to us it is wrong in its
principle, and certainly would be pernicious in its
effects.

"The doctrine, exactly as stated, may be true when
applied to the legislature of the state, which, as a co-
ordinate branch of the government representing and
exercising in its sphere the sovereignty of the people,
is, for political reasons of manifest force, wholly exempt
in all its proceedings from any legal process or judicial
control; *but the doctrine is not, nor is any portion of it,
true when applied to a subordinate municipal body, which,
although clothed to some extent with legislative and even
political powers, is yet, in the exercise of all its powers, just*

*as subject to the authority and control of courts of justice, to legal process, legal restraint, and legal correction as any other body or person, natural or artificial.*

" The supposition that there exists an important distinction, or any distinction whatever, between a municipal corporation and any other corporation aggregate, in respect to the powers of courts of justice over its proceedings, is entirely gratuitous, and as it seems to me is as destitute of reason as it certainly is of authority. The counsel could refer us to no case, nor have we found any, in which the judgment of the court has proceeded upon such a distinction; nor in our researches, which have not been limited, have we been able to discover that, by any judge or jurist, the existence of such a distinction has ever been asserted or intimated." (Pages 494, 495.)

This case was affirmed by the court of appeals of New York, in *People* v. *Sturtevant*, 9 N. Y. 263, 59 Am. Dec. 536, and the doctrine announced meets with our approval.

Counsel for appellants rely mainly in support of their position on the decisions of the supreme court of the United States in what are known as the Granger cases, the leading one of which is the case of *Munn* v. *Illinois*, 94 U. S. 113. But while there may be some language used in the opinion in that case tending to maintain their contention, there was no such question presented as we have here, and the point made in this case was not decided. The question there presented is clearly stated by the learned chief justice in his opinion: " The question to be determined in this case is, whether the general assembly of Illinois can, under the limitations upon the legislative power of the states imposed by the constitution of the United States, fix by law the maximum of charges of the storage of grain in warehouses at Chicago and other places in the state having not less than one hundred thousand inhabitants, ' in which grain is stored in bulk, and in which the grain of different owners is mixed together, or in which grain is stored in such a

manner that the identity of different lots or parcels cannot be accurately preserved.'" (Page 123; see also, for a statement of the questions passed upon in this case, *Wabash etc. R'y Co.* v. *Illinois*, 118 U. S. 557–568.)

It will be observed from this statement that the only question there was whether the power to regulate prices rested in the legislature of the state of Illinois at all, and not whether, if it did exist, it was exclusive, and beyond judicial inquiry and control.

That there was no intention to decide that the courts have no jurisdiction to interfere in this class of cases, upon a proper showing, is clearly indicated by what is said by the same court in later decisions, and by judges of other federal courts. In the case of *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347, Chief Justice Waite, who delivered the opinion in *Munn* v. *Illinois*, said: "That it is within the power of the government to regulate the prices at which water shall be sold by one who enjoys a virtual monopoly of the sale, we do not doubt. That question is settled by what was decided on full consideration in *Munn* v. *Illinois*, 94 U. S. 113. As was said in that case, such regulations do not deprive a person of his property without due process of law. *What may be done if the municipal authorities do not exercise an honest judgment, or if they fix upon a price which is manifestly unreasonable, need not now be considered, for that proposition is not presented by this record. The objection here is not to any improper prices fixed by the officers, but to their power to fix prices at all.* By the constitution and the legislation under it, the municipal authorities have been created a special tribunal to determine what, as between the public and the company, shall be deemed a reasonable price during a certain limited period. Like every other tribunal established by the legislature for such a purpose, their duties are *judicial* in their nature, and they are bound in morals and in law to exercise an honest judgment as to all matters submitted for their

official determination." (Page 354.) Again, in *Stone* v. *Farmers' Loan and Trust Co.*, 116 U. S. 307-331, Chief Justice Waite said: "From what has thus been said, it is not to be inferred that this power of limitation or regulation is itself without limit. This power to regulate is not a power to destroy, and limitation is not the equivalent of confiscation. Under pretense of regulating fares and freights, the state cannot require a railroad corporation to carry persons or property without reward; neither can it do that which in law amounts to a taking of private property for public use without just compensation, or without due process of law. What would have this effect, we need not now say, because no tariff has yet been fixed by the commission, and the statute of Mississippi expressly provides 'that in all trials of cases brought for a violation of any tariff of charges, as fixed by the commission, it may be shown in defense that such tariff so fixed is unjust.' " (Page 331; see also *Dow* v. *Beidelman*, 125 U. S. 680.)

In the case of *Georgia Banking Co.* v. *Smith*, 128 U. S. 174-179, Mr. Justice Field sums up the former decisions of that court as follows: "It has been adjudged by this court in numerous instances that the legislature of a state has the power to prescribe the charges of a railroad company for the carriage of persons and merchandise within its limits, in the absence of any provision in the charter of the company constituting a contract vesting in it authority over these matters, *subject to the limitation that the carriage is not required without reward, or upon conditions amounting to the taking of property for public use without just compensation;* and that what is done does not amount to a regulation of foreign or interstate commerce." (Page 179.)

· It will be observed that in all the decisions of the supreme court of the United States, while the power of the state to regulate these charges is recognized, the power is

so limited as to authorize just what it is contended should be done by the court in this case.

This same limitation, so necessary to the protection of the rights and property of corporations and individuals vested with a public use, is fully recognized by Brewer, J., now one of the justices of the supreme court of the United States, in *Chicago & N. W. R'y Co.* v. *Dey*, 35 Fed. Rep. 866, 877. After reviewing the Granger cases and other cases above cited, he says: "It is obvious from these last quotations that the mere fact that the legislature has pursued the forms of law in prescribing a schedule of rates does not prevent inquiry by the courts; and the question is open, and must be decided in each case, whether the rates prescribed are within the limits of legislative power, or mere proceedings, which, in the end, if not restrained, will work a confiscation of the property of complainant. Of course, some rule must exist, fixed and definite, to control the action of the courts; for it cannot be that a chancellor is at liberty to substitute his discretion as to the reasonableness of rates for that of the legislature. The legislature has the discretion, and the general rule is, that, where any officer or board has discretion, its acts within the limits of that discretion are not subject to review by the courts. Counsel for complainant urged that the lowest rates the legislature may establish must be such as will secure to the owners of the railroad property a profit on their investment at least equal to the lowest current rate of interest, say three per cent. Decisions of the supreme court seem to forbid such a limit to the power of the legislature in respect to that which they apparently recognize as a right of the owners of the railroad property to some reward; and the right of judicial interference exists only when the schedule of rates established will fail to secure to the owners of the property some compensation or income from their investment. As to the amount of such compensation, if some compensation or reward is in fact secured, the legislature is

the sole judge." (Page 878; see further, as supporting this view, *Pensacola & A. R. Co.* v. *State*, 5 South. Rep. 833.)

Counsel on both sides have shown great industry and research in the presentation of this case, and many authorities are cited bearing more or less directly on this question, but we cannot extend this opinion by noticing or even citing them all. We have cited sufficient, we think, to sustain fully our view that the court below had jurisdiction, and that the complaint presented a case sufficient to call for the interposition of the court in the matter. The conclusion we have reached on this question is decisive of the case, but there are other points made and argued in the briefs which it is proper we should notice.

On the part of the appellant it is contended that a part of the allegations of the complaint necessary to make out a cause of action are of mere conclusions of law, and should not be considered. We think, however, that the allegations referred to, or enough of them to entitle the plaintiff to the relief demanded, are well pleaded. There are other objections to the form of the complaint and the manner of alleging the facts, which are equally groundless. It is further claimed that the mayor of the city should have been made a party, but we do not regard this as necessary.

On the part of the respondent it is contended, in support of the decision of the court below, that notice to the plaintiff of an intention to fix the rates was necessary, and that without such notice being given, the action of the board was a taking of its property without due process of law. But the constitution is self-executing, and as it does not require notice, we think no notice was necessary.

It does not follow, however, that because no notice is necessary the board are for that reason excused from applying to corporations or individuals interested to obtain

all information necessary to enable it to act intelligibly and fairly in fixing the rates. This is its plain duty, and a failure to make the proper effort to procure all necessary information from whatever source may defeat its action. Both the corporation and the individuals furnishing the water, as well as the public, who must pay for its use, are entitled to a careful and honest effort on the part of the board to obtain such information and to have it act accordingly.

It is objected to the ordinance that it gives every householder an option to require a meter upon his premises, and to pay for the water furnished at meter rates, which are different from the house rate. It is contended that this does not fix the rate as the constitution requires, but leaves it indefinite and uncertain. We do not think the ordinance is defective in this respect. The rates are definitely fixed, and the fact that there may be one price for the consumer who has a meter, and a different price for one who has none, does not render the ordinance uncertain. It is also contended that the requirement that meters shall be furnished by the plaintiff is unreasonable and cannot be enforced, but we think otherwise. The requirement that the party furnishing water shall provide the means necessary for its measurement, so that the quantity furnished and to be paid for may be known, is not an unreasonable regulation. The expense of the meter could not be imposed on the consumer. (*Red Star Steamship Co.* v. *Jersey City,* 45 N. J. L. 246.) There are other objections to the ordinance which we need not notice specifically. It is enough to say that, in our opinion, none of them are well taken.

Finally, we are asked by the respondent to lay down some basis upon which the board must proceed in fixing rates. But we do not feel that we should attempt to lay down such a rule in advance. This must be left for the board to determine.

Judgment affirmed.

McFARLAND, J., SHARPSTEIN, J., PATERSON, J., and BEATTY, C. J., concurred.

Mr. Justice Fox, being disqualified, did not participate in the decision of this case.

THORNTON, J., dissenting. — I dissent. I am of the opinion that the superior court had jurisdiction of this case. It has jurisdiction of all cases in equity. (Const., art. 6, sec. 5.) I have no doubt it has jurisdiction of the case attempted to be made by the complaint herein as presented in that pleading. It is a case brought for preventive relief. Its general purport is to prevent the property of the plaintiff from being taken by the action of the board of supervisors of the city and county of San Francisco, claimed to be unauthorized by law, without due process of law and without compensation. All other relief sought is incidental to that just mentioned. Surely there can be no doubt at this day that such a case is within the equity jurisdiction of the superior courts of the state. The questions here to be considered relate to the exercise of jurisdiction, and the limits the law prescribes to the exercise of that jurisdiction. If the court has not exceeded such limits, its judgment must stand. The only real questions presented in this case relate to error in the employment of its jurisdiction. The judgment is correct, unless there can be found error in the record.

The question of the sufficiency of the complaint first attracts attention, and I am of opinion that the complaint does not state facts sufficient to constitute a cause of action.

The complaint is defective in this: that it does not show on its face, by proper averment, that the rates fixed by the defendant board of supervisors are unjust, or unreasonable or oppressive, and will not yield to the plaintiff all the revenue to which, under the law, it is entitled.

The averments in regard to the fixing of rates are general and indefinite.

The one most particular and definite, and on which, in my opinion, the decision of the case must turn, is contained in the following paragraph of the complaint: " That the said ordinance or order is, and the rates purporting to be prescribed and fixed thereby are, grossly unjust, unreasonable, and oppressive; that said rates do not permit of nor provide for a just or fair or reasonable compensation for the water to be supplied during said year by this plaintiff, to said city and county and to the inhabitants thereof; and that if said ordinance or order is enforced, and if the plaintiff is prevented from charging and collecting any other or greater rates than those prescribed, its gross income from the said rates for the year commencing July 1, 1889, and ending June 30, 1890, will not and cannot possibly exceed the sum of seven hundred and fifty thousand dollars; and it will be wholly insufficient to pay the interest on the plaintiff's indebtedness, its operating expenses and taxes; and not only will not and cannot yield any dividend to its stockholders, but will render it necessary to levy heavy assessments upon said stockholders to pay said interest, expenses, and taxes."

It is here averred that the rates allowed by the ordinance will not and cannot produce an income, and will not allow the plaintiff to collect a sum which exceeds in amount seven hundred and fifty thousand dollars.

The plaintiff must show to the court by the averments that this is so; general averments of the character above set forth are insufficient. The facts must be pleaded from which the court can perceive, and itself make an estimate, and the estimate so made by the court must show a result from which it can perceive that the rates fixed are unjust and unreasonable, and will produce an income less than that to which the plaintiff is by law entitled. Such a result must be shown by the facts

stated in the pleading. The *data* on which the compu-
tation is to be made must appear by distinct allegation
on the face of the complaint. The mere statement of
the plaintiff as to the amount of money which the rates
will bring to its coffers cannot be accepted by the court.
(*Branham* v. *Mayor etc.*, 24 Cal. 602.)

The facts in this regard are not sufficiently pleaded,
and for this reason they are not admitted by the demur-
rer. A party demurring admits only such facts as are
well pleaded. (*Branham* v. *Mayor etc.*, 24 Cal. 602; *John-
son* v. *Kirby*, 65 Cal. 487; Stephen's Pleading, 143;
Gould's Pleading, c. 9, secs. 5, 6, 24, 29.)

In *Branham* v. *Mayor etc.*, the court said: "Had the
ayuntamiento power to mortgage the pueblo lands to
Aram, Belden, and Reed, under the circumstances and
for the purposes narrated in the complaint? This ques-
tion is not discussed by counsel for appellant, under the
pretense that it cannot be made upon demurrer; hold-
ing that, inasmuch as he has averred that the ayunta-
miento, being a municipal body, could take and exercise
only such powers as were conferred by the will of the
sovereign, as expressed in the laws creating it. Every
question as to what power has been conferred by such
laws is a question of law, and not of fact; and the aver-
ment in the complaint that the ayuntamiento had full
power and lawful authority to do the act in question is
but an averment of a conclusion of law, and does not
tender an issue of fact. A demurrer admits the truth of
such facts as are issuable and well pleaded; but it does
not admit the conclusions which counsel may choose to
draw therefrom, although they may be stated in the
complaint."

In *Johnson* v. *Kirby*, 65 Cal. 487, the following obser-
vations were made by the court on this point: "It is
also averred that this assessment was not levied in ac-
cordance with law, and is void; but the defendants insist
that it is valid, and treat it as valid. The pleader does

not state any fact showing or tending to show that the assessment was not made in accordance with law, or that it is not valid. It is stated in the complaint, as matter of law, as a legal conclusion. A demurrer only admits such facts to be true as are well pleaded. It does not admit matter of law or legal conclusions. Such averment, then, goes for nothing. We cannot take it into consideration in deciding the questions in this cause. Nor can we take into consideration the averment that the company sold the thirteen shares of stock to the Lanes, and thereby Kirby became possessed of the benefits of this stock. It is not alleged in what mode he became possessed of these benefits. It is not averred that the Lanes were Kirby under another name; that they were in fact Kirby himself. It is not stated that Kirby became in any way the owner of the shares, but became possessed of benefits. What these benefits are does not appear. That he became possessed of benefits is a legal conclusion. No facts are alleged, and therefore none are admitted by the demurrants."

The facts above stated, taken from the complaint, are conclusions of fact, or conclusions made up of law and fact, and whether conclusions of fact, or conclusions of law and fact, they are alike insufficient. As said in *Branham* v. *Mayor etc.,* " a demurrer admits the truth of such facts as are issuable and well pleaded; but it does not admit the conclusions which counsel may choose to draw therefrom, although they may be stated in the complaint." (24 Cal. 602.)

I cannot perceive how a court can accept the conclusions drawn by the pleader in the paragraph above quoted as well pleaded and admitted by the demurrer.

That the allegation, "the said ordinance or order is, and the rates purporting to be prescribed and fixed hereby are, grossly unjust, unreasonable and oppressive," is a conclusion either of fact, or of law and fact, is too plain to admit of doubt. The same is true of the succeed-

ing allegation, "that said rates do not provide for a just or fair or reasonable compensation for the water to be supplied during said year by the plaintiff to said city and county and to the inhabitants thereof." The above allegation states no issuable fact; it is full of conclusions, and nothing beside. The next allegation is of the same character.

The defendant should not be called on to answer such allegations. Under our system of pleading, facts only must be stated. This means the facts as contradistinguished from the law, from argument, from hypothesis, and from the evidence of the facts. (*Green* v. *Palmer*, 15 Cal. 412; 76 Am. Dec. 492, and cases cited in note of second edition of 15 Cal.) Such allegations of fact the defendant is only required to answer. (See case last cited.)

The rule that should control in this case is that which is applied to pleadings in which fraud is charged. Though fraud is not expressly charged, still the charges are of a gross dereliction of duty, and the facts showing such dereliction should be set forth in the complaint. The counsel for plaintiff strenuously asserts and contends that it is a case of fraud, and bases an earnest argument on it to sustain the jurisdiction of the court below. It is not sufficient to aver fraud in general terms; the facts constituting the fraud must be alleged. This is held in many cases decided by this court. This course of decision commenced at an early date in this state, as in *Gushee* v. *Leavitt*, 5 Cal. 160, 63 Am. Dec. 116, decided in 1885; *Kinder* v. *Macy*, 7 Cal. 207, decided in 1857, and continued in *Kohner* v. *Ashenauer*, 17 Cal. 580; *Meeker* v. *Harris*, 19 Cal. 289; 79 Am. Dec. 215; *Castle* v. *Bader*, 23 Cal. 76; *Semple* v. *Hager*, 27 Cal. 163; *Hager* v. *Shindler*, 29 Cal. 60; *Kent* v. *Snyder*, 30 Cal. 674; *Perkins* v. *Center*, 35 Cal. 713; and many other cases which can be found by reference to the digest.

*Dow* v. *Beidelman*, 125 U. S. 680, is a strong authority to support the contention herein put forth.

The question in that case was as to the reasonableness of rates of transportation prescribed by the statute of the state of Arkansas on a railroad within that state. Justice Gray delivered the opinion of the court, in which he quoted with approval the rule laid down in *Stone* v. *Farmers' etc. Co.*, 116 U. S. 307, as to the limitation of the power to prescribe rates in such cases, viz., that the rates must not be so fixed as to amount to a taking of private property for public use without compensation, or without due process of law. The opinion subsequently proceeds as follows: "The plaintiffs in error do not contend that it is always or generally unreasonable to restrict the rate for carrying each passenger to three cents a mile. They argue that it is so in this case by reason of the admitted fact that with the same traffic that their road has now, and charging for transportation at the rate of three cents per mile, the net yearly income will pay less than one and one half per cent on the original cost of the road, and only a little more than two per cent on the amount of its bonded debt. But there is no evidence whatever as to how much money the bonds cost, or as to the amount of capital stock of the corporation as reorganized, or as to the sum paid for the road by that corporation or its trustees. It certainly cannot be presumed that the price paid at the sale under the decree of foreclosure equaled the original cost of the road or the amount of outstanding bonded debt. Without any proof of the sum invested by the reorganized corporation or its trustees, the court has no means, if it would under any circumstances have the power, of determining that the rate of three cents a mile fixed by the legislature is unreasonable. Still less does it appear that there has been any such confiscation as amounts to a taking of property without due process of law."

The action in *Dow* v. *Beidelman*, 125 U. S. 680, was

brought against certain trustees, who were alleged to be the owners and in possession of the railroad. The defendants did not prove the facts referred to in the above extract from the opinion to show that the rates prescribed by the statute were unreasonable, and therefore they failed in the suit.

Such facts could not be proved without being alleged. It is so held in *Green* v. *Palmer, supra,* and it is common law and common learning. A party must allege every material fact which he is required to prove, and will be precluded from proving any fact not alleged. (15 Cal. 412, 415.) In view of this rule, which is of frequent application in courts, *Dow* v. *Beidelman* is a strong authority to show that the view of the complaint above taken is correct, and that it does not state facts sufficient to constitute a cause of action.

The complaint here does not furnish *data* or state facts from which a court can see that the rates allowed by the ordinance are not just and reasonable, or that the income which will be received by the plaintiff from the adoption of such rates in making collections will not furnish all the revenue which the law allows, or that it can claim. One cannot perceive or calculate from any facts set forth in the complaint the amount which the rate-payers will have to pay under the rates prescribed by the ordinance each month or for the year. Until such facts are set forth so as to make manifest to judicial cognition what such amount must and will be, it cannot be held that the complaint is sufficient.

A court should not consider a cause when such grave charges of an intentional dereliction of duty (for it is clear that intentional wrong is intended here to be charged) against a public officer are stated in the complaint. Nor should such officer be held to answer them. They should be made specific in statement, so that the defendant may see in advance what he has to admit or deny, and what evidence he will have to produce to

disprove the charges made against him.    The board of supervisors have important and responsible duties to perform, and when they are charged with a dishonest and intentional failure to discharge their duties, the complaint should aver in what particulars they have so failed.    *Fraud* lurks in generalities, and the law imposes on every plaintiff the obligation in making such charges to make them in distinct and specific language. The complaint should not be argumentative, nor an attempt to show by inference to be drawn from general statements, that public officers have been guilty of intentionally dishonest conduct in the discharge of their official duties.    Courts are bound to assume that the supervisors are men of ordinarily respectable standing, and they have a right to ask and demand of courts that they should be protected as far as the law allows from charges of dishonest official conduct couched in general statements.    They should be stated specifically, so that each of them may know what the charge is, and what they have to defend against.    This is common justice, every day administered by courts, and never otherwise administered.

I do not think, for the reasons above stated, that the statements of the complaint generally made, as pointed out, are sufficient to justify the court in coming to the conclusion that the board of supervisors of the city and county of San Francisco, in fixing rates for water, to be paid by the rate-payers in February, 1889, have failed in discharging their duty honestly and uprightly, and I am of opinion that the court below erred in overruling the demurrer to the complaint, for which error the judgment should be reversed.

I am of opinion that it is incumbent upon the board of supervisors of the city and county of San Francisco to so fix the rates for which water is to be sold by the plaintiff as to furnish it a fair income on its investment employed in furnishing water to the rate-payers, but not

on any investment made by it not so employed. What is such a rate is submitted by the constitution and laws to the discretion of the board. This discretion, when fairly exercised, cannot be controlled by this court or any other court. It is so held in all the cases cited by counsel for the plaintiff. When the fairness of the rates so established is attacked in a court of justice, and the court can see that such a discretion has been exercised as to allow a compensation to the company furnishing water beyond the cost of furnishing it, it cannot interfere in the rates so fixed. Its power is then at an end. It is so limited by the law, and courts cannot pass this limit without usurpation. Such must be the rule, or the courts must assume the duty vested by the constitution in the board of supervisors.

Take the rule as stated in the cases cited and relied on by the able and learned counsel for plaintiff.

In *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347, this was said, with reference to the power of the defendant board of supervisors to fix rates: "Like any other tribunal established by the legislature for such a purpose, their duties are judicial in their nature, and they are bound in morals and in law to exercise an honest judgment as to all matters submitted for their official determination."

In *Stone* v. *Farmers' etc. Co.*, 116 U. S. 307, the court, in speaking of the power of the legislature through the agency of a commission to fix rates of fare and freight on railroads within the state, said: "This power to regulate is not a power to destroy, and limitation is not the equivalent of confiscation. Under pretense of regulating fares and freights, the state cannot require a railroad corporation to carry persons or property without reward; neither can it do that which in law amounts to a taking of private property for public use without just compensation, or without due process of law. What will have this effect we need not now say," etc.

In *Dow* v. *Beidelman*, 125 U. S. 680, reference is made to the cases above referred to, and the same rule is stated. In this case, the defendants, who were the railroad trustees, failed in their defense for lack of proof that the rates fixed by the legislature of Arkansas were unreasonable.

In *Georgia etc. Co.* v. *Smith*, 128 U. S. 174–179, the court, speaking by Field, J., said: "It has been adjudged by this court in numerous instances that the legislature of a state has the power to prescribe the charges of a railroad company for the carriage of persons and merchandise within its limits, in the absence of any provision in the charter of the company constituting a contract vesting in it authority over those matters, subject to the limitation that the carriage is not required without reward, or upon conditions amounting to the taking of property for public use without just compensation."

The cases of *Chicago etc. R. R. Co.* v. *Dey*, 35 Fed. Rep. 866, and *Hume* v. *Becker*, 35 Fed. Rep. 883, are decided on the same rule.

The above rule, as is seen in the case of *Hume* v. *Becker*, above mentioned, only amounts to this: that in fixing rates, something must be allowed beyond the expense or cost of service. In that case, the rates fixed by a state railroad commissioner for switching cars was $1 per car, while it cost the plaintiff railroad company $1.14 for such service. The court below held that this rate could not be enforced, quoting this remark from the Railroad Commission Cases, 116 U. S. 331: "The state cannot require a railroad corporation to carry persons or property without reward." (See further, *Pensacola R. R. Co.* v. *Florida*, 5 South. Rep. 833; *State* v. *Cincinnati Gaslight Co.*, 18 Ohio St. 298, 301, 302.) The rule established by the cases cited may be formulated thus: the rates fixed must allow something beyond the cost of service. This something is compensation. If such compensation is

allowed, there is no taking of property without compensation.   (See cases cited above.)

What the compensation shall be is left entirely to the discretion of the state or the railroad commission, and here to the board of supervisors.   This is plainly set forth in *Chicago etc. R. R. Co.* v. *Dey, supra.*   Brewer, J., after quoting the rule from the cases decided by the supreme court of the United States, and particularly from *Stone* v. *Trust Co.*, 116 U. S. 307, said:—

"It is obvious from these last quotations that the mere fact that the legislature has pursued the forms of law in prescribing a schedule of rates, does not prevent inquiry by the courts, and the question is open, and must be decided in each case, whether the rates prescribed are within the limits of legislative power, or mere proceedings which in the end, if not restrained, will work a confiscation of the property of complainant.   Of course, some rule must exist, fixed and definite, to control the action of the courts, for it cannot be that a chancellor is at liberty to substitute his discretion as to the reasonableness of rates for that of the legislature.   The legislature has the discretion, and the general rule is, that where any officer or board has discretion, its acts within the limits of that discretion are not subject to review by the courts.   Counsel for complainant urge that the lowest rates the legislature may establish must be such as will secure to the owners of the railroad property a profit on their investment at least equal to the lowest current rate of interest, say three per cent.   Decisions of the supreme court seem to forbid such a limit to the power of the legislature in respect to that which they apparently recognize as the right of the owners of the railroad property to some reward; and the right of judicial interference exists only when the schedule of rates established will fail to secure to the owners of the property some compensation or income from their investment.   As to the amount of such compensation, if some compensation or

reward is in fact secured, the legislature is the sole judge.

"The question is then one alone of policy. Whether, by reducing the compensation to a minimum, railroad enterprises shall be discouraged, or, enlarging, encouraged, is a matter for legislative, and not judicial, determination. Take a kindred matter. It is within the power of the legislature to prescribe the rate of interest, and to punish by severe penalties the exaction of larger than the legal rate. What that legal rate shall be is not for the courts, but for the legislature, to determine. Suppose the legislature of Iowa should reduce the legal rate of interest to one per cent, although such legislation would prevent capital from coming into the state, would the courts have power to declare the law unconstitutional? In like manner the rulings of the supreme court imply that the legislature may reduce railroad rates until only a minimum of compensation is secured to the owner. The rule, therefore, to be laid down is this: that where the proposed rates will give some compensation, however small, to the owners of the railroad property, the courts have no power to interfere. Appeal must then be made to the legislature and the people. But where the rates prescribed will not pay some compensation to the owners, then it is the duty of the courts to interfere and protect the companies from such rates."

In regard to the contention that as to the rates fixed the courts must decide what is reasonable, and not the legislature, it was said: "Where property has been clothed with the public interest, the legislature may fix a limit to that which in law shall be reasonable for its use. *This limits the courts* as well as the people. If it has been improperly fixed, the legislature, not the courts, must be appealed to for the change." (94 U. S. 178.)

In *Dow* v. *Beidelman*, 125 U. S. 680, the above language of Chief Justice Waite was quoted with approval, and the rule laid down in it acted on. That it was acted

on in that case will appear so plainly from a perusal of the opinion that it is not necessary to spend time in pointing it out. The rule thus declared by the chief justice is supported by *Peik* v. *Chicago etc. R. R. Co.,* 94 U. S. 178; *Chicago etc. R. R. Co.* v. *Ackley,* 94 U. S. 179; *Winona etc. R. R.* v. *Blube,* 94 U. S. 180; *Stone* v. *Wisconsin,* 94 U. S. 181; *Dow* v. *Beidelman,* 125 U. S. 687, 688.

In my judgment, those cases establish the rule that in fixing rates the compensation to be allowed must exceed running expenses or cost of service. What the amount of that compensation shall be is confided entirely to the discretion of the tribunal fixing the rates. When such compensation is allowed, it "limits the courts as well as the people. If it has been improperly fixed, the legislature, not the courts, must be appealed to for the change." As said by Brewer, J.: " It cannot be that a chancellor is at liberty to substitute his own discretion as to the reasonableness of rates for that of the legislature." (35 Fed. Rep. 878.)

That an enlarged discretion is committed by the constitution and statute to the board of supervisors in the matter of fixing rates for water, cannot be disputed. They cannot so exercise this discretion as to compel the plaintiff to render the service of supplying water without reward. They must so fix the rates that a sufficient amount of money may be derived on their collection by the plaintiff to pay the cost of services, and beyond that some reward or compensation. What such reward or compensation shall be is a matter left entirely to the discretion of the board, and with the exercise of such discretion the courts cannot at all interfere.

The above is the result of all the decisions which have been cited and relied on by the plaintiff's counsel. After a diligent examination, I can find no other principles or rules established.

According to this rule, the rates must be so fixed as to

allow money to be raised to pay the fairly necessary operating expenses of the plaintiff in rendering the service required. In this I include taxes on the property of the plaintiff invested and used in rendering such service as part of such operating expenses.

In fixing the compensation, regard must be had by the board to the value of the investment of the plaintiff in rendering the service required of it. The board must get at the value of the property of which the investment of the plaintiff consists, and upon such value they will allow such compensation as in their discretion · they shall think fair and right.

The obligation does not rest on the board to fix the rates so as to furnish money to the plaintiff to pay the interest on the bonds negotiated by it. If the plaintiff has invested the money borrowed on the bonds in purchasing property used by it in rendering the service due from it, the value of the property, as said above, must be taken into consideration in fixing the reward or income it is to receive. When the value of such property has been taken into consideration, and the compensation fixed in regard to it, to allow rates so as to raise a sum sufficient to pay the interest on the bonds would be to allow compensation for the property bought with the money raised on the bonds, and for interest on such money in addition. This would be to allow for it *twice.*

If any portion of the money borrowed on the bonds was not invested in the property, needful and used in rendering the service required of plaintiff, it would be manifestly unjust to compel the rate-payers to pay interest on money so borrowed.

If the bonds bear too high a rate of interest, the rate-payers should not be required to furnish any money, if bound at all to furnish it for such purpose, to pay more than a reasonable rate of interest.

The above considerations show that the rates should be fixed so as to furnish compensation to the plaintiff

based on the amount invested, and not on their bonds or any other debts.

Nor is the board bound to fix rates to furnish the money to be used in the further extension or construction of the water-works of plaintiff. The rate-payers cannot be called on to pay for the construction of water-works which the plaintiff is to own, and on the value of which compensation is to be allowed it. This would be to compel the rate-payers to furnish money to buy property for plaintiff, and also to pay plaintiff an income on such property when so paid for by them. The rate-payers, in such case, would buy the property for the plaintiff, and pay it interest on it. This cannot be just or right.

In dealing with this subject of rates, the rate-payers have rights which are to be regarded. The board must remember that, while they owe a duty to the plaintiff, they also owe a duty to the rate-payers. Their rights are to be regarded as well as the rights of the plaintiff; and while a fair compensation, considering the value of its investment, should be allowed to the plaintiff, this compensation should be adjusted with regard to the rights of those who have to pay such rates to the plaintiff.

The notice to the plaintiff was sufficient. The constitution and statutes, of which plaintiff must be held to have been cognizant, informed plaintiff that the rates had to be fixed by the board in the month of February of this year, and of each year. (Cal. Const., art. 14, sec. 1; and sec. 2 of act of March 7th, Stats. 1881, p. 54.) A tax-payer has no more notice of the assessment of his property, and of the meeting of the board of equalization. If a tax-payer desires the valuation of his property fixed by the assessor reduced by the board of equalization, he must take notice of its meetings, which are fixed by law; and must apply to the board to be heard for that purpose.

The law as to the notice requisite is clearly set forth in the State Railroad Tax Cases, 92 U. S. 575, and the rule there declared is clearly applicable to the notice required in this case.

The point as to notice claimed by the railroad corporation in these tax cases was there disposed of by the court (all concurring), speaking by Miller, J.:—

"There is, however, an objection urged to the conduct of the board of equalization, resting on the action of the board in these particular cases, in which they are charged with a gross violation of the law, to the prejudice of the corporations, which we will consider. The statute requires the proper officers of the railroad companies to furnish to the state auditor a schedule of the various elements already mentioned as necessary in applying the statutory rule of valuation. It is charged that the board of equalization increased the estimates of value so reported to the auditor without notice to the companies, and without sufficient evidence that it ought to be done; and it is strenuously urged upon us that for the want of this notice the whole assessment of the property and levy of taxes is void. It is hard to believe that such a proposition can be seriously made. If the increased valuation of property by the board without notice is void as to the railroad companies, it must be equally void as to every other owner of property in the state when the value assessed upon it by the local assessor has been increased by the board of equalization. How much tax would thus be rendered void, it is impossible to say. The main function of this board is to equalize these assessments over the whole state. If they find that a county has its property assessed too high in reference to the general standard, they may reduce its valuation; if it has been fixed too low, they raise it to that standard. When they raise it in any county, they necessarily raise it on the property of every individual who owns any in that county. Must each one of these

have notice and a separate hearing? If a railroad com-
pany is by law entitled to such notice, surely every indi-
vidual is equally entitled to it. Yet if this be so, the
expense of giving notice, the delay of hearing each indi-
vidual, would render the exercise of the main function
of this board impossible. The very moment you come
to apply to the individual the right claimed by the cor-
poration in this case, its absurdity is apparent. Nor is
there any hardship in the matter. This board has its
time of sitting fixed by law. Its sessions are not secret.
No obstruction exists to the appearance of any one
before it to assert a right or redress a wrong; and in the
business of assessing taxes, this is all that can be rea-
sonably asked." (92 U. S. 609, 610.)

The subject of notice was also considered and passed
on in *Davidson* v. *New Orleans,* 96 U. S. 97, and the *Ken-
tucky Railroad Tax Cases,* 115 U. S. 331, and by this
court in *Lent* v. *Tillson,* 72 Cal. 413.

In the last cited case, where the point was fully argued
by counsel, and considered and discussed by the court,
this court said: "It is claimed that the act does not
provide for due process of law, because the notices
prescribed are insufficient. The notices provided for
in the act, which are criticised under this head, are,
the notice of the organization of the board, and the
notice that the report of the board is open for inspec-
tion. The sufficiency of the notice will depend to a
very considerable extent on the nature of the proceed-
ing and the statute on which it is based. The statute is
always presumed to be known, and whether the notice
really affords the necessary information and gives the
party whose interests are affected an opportunity to be
heard, must depend largely upon those provisions. It
has been repeatedly held that proceedings for the levy
and collection of taxes are not necessarily judicial, and
that due process of law, as applied to such matters, does
not require such notice as is considered essential to the

validity of a judgment.  In the *Kentucky Railroad Tax Cases,* 115 U. S. 331, it is said: 'Notice by statute is generally the only notice given, and that has been held sufficient.  In judging what is due process of law,' said Justice Bradley, in *Davidson* v. *New Orleans,* 96 U. S. 97, 'respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these; and if found to be suitable or admissible in the special case, it will be adjudged to be due process of law; but if found to be arbitrary, oppressive, and unjust, it may be declared to be not due process of law.'  In other words, the sufficiency of the notice must be determined in each case from the particular circumstances of the case in hand. And further, in matters of assessment and taxation, the same character of notice is not required as in ordinary actions in a court of justice, for the reason, I presume, that in such summary proceedings it is not practicable or usual."

The court then proceeds to argue the question fully, and holds that the provisions of the statute gave notice, and no more particular notice was required; that the notice so given was all that " *due process of law* " required.

I am of opinion that the cases above cited should be regarded as settling the law on this question, and settling it adversely to the contention put forth in behalf of plaintiff.  It cannot be said that any more specific notice is required in a case like this, where a plaintiff is seeking to acquire a right to levy and collect rates or taxes on the rate-payers, than there is required for the assessment of taxes or for an assessment for local improvements on the property benefited thereby.

In accordance with the criterion stated and adopted in *Davidson* v. *New Orleans,* 96 U. S. 97, if the notice is found to be suitable or admissible in the peculiar case,

it will be adjudged to be due process of law, but if found to be arbitrary, oppressive, or unjust, it may be declared to be not due process of law.

I cannot find the notice to the plaintiff here to be either arbitrary, oppressive, or unjust. On the contrary, it is clearly suitable and admissible.

The contention preferred here on the point is manifestly destitute of merit.

It does not appear that the plaintiff made any application to the board for a hearing until the last day of the month (February) in which the rates were to be fixed. It could have made such application at any time during the month of February, or of January or December preceding. Nothing prevented it from informing the board of its desire to be heard, and requesting the fixing of a day for such hearing. The board of supervisors, on the 3d of December, 1888, in accordance with the provisions of section 2 of the act of March 7, 1881, adopted an ordinance requiring plaintiff to furnish the statement required by section 2 of the act above mentioned, with which it (plaintiff) complied on the 31st of January, 1889. Certainly there was no impediment to its asking the board for a hearing, and to fix a day for such hearing, at any time after the 3d of December above mentioned. No court has a right to assume that the board would not have complied with such a request if seasonably made. In my opinion it was not bound to comply with the request when made on the last day of February, and on the last day of the month within which the board was required by the constitution and by the statute, under a penalty of removal from office (sec. 8), to act. The request then made was unseasonable and unreasonable, and the board denied no right of plaintiff in refusing such a request.

As to the right of the plaintiff to introduce evidence before the board, this must be left to the discretion of the board. I cannot see that the law clothes the plain-

tiff with any such right.   It seems to me that the legislature has regulated the matter of evidence by the act of March 7, 1881.   This is done by sections 2 and 3 of the act of 1881.   (See Stats. 1881, pp. 54, 55.)   By section 2, the plaintiff corporation is required, upon the requisition of the board of supervisors, to furnish to the board, in the month of January of each year, a detailed statement, verified by the oath of the president and secretary of the corporation, showing the name of each water-rate payer, his or her place of residence, and the amount paid for water by each of such water-rate payers during the year preceding the date of such statement, and also showing all revenues derived from all sources, and an itemized statement of expenditures made for supplying during said time.

By section 3 it is provided that, accompanying the statement above mentioned, the plaintiff corporation shall furnish to the board a detailed statement, verified in like manner as the other statement, showing the amount of money actually expended annually, since commencing business, on the purchase, construction, and maintenance, respectively, of the property necessary to the carrying on of its business, and also the gross cash receipts annually, for the same period, from all sources.

I remark here that though the first statement is required by law to be furnished in the month of January of each year, it was not furnished by the plaintiff in the year 1889 until the thirty-first day of January.   It does not appear that the other statement required by section 3 has ever been furnished.   The averment that the plaintiff, ever since the passage of the act of 1881, has complied in every respect with all the requirements thereof, is insufficient to show that it furnished in January, 1889, or at any other time, the statement required by section 3.   The general averment of performance is allowed in pleading the performance of conditions pre-

cedent in a contract (Code Civ. Proc., sec. 475), but here there is no contract, and the section is not applicable. The general allegation of compliance is manifestly insufficient. I know of no rule of pleading which permits or justifies it.

The legislature, under the first clause of article 14 of the constitution has clearly fixed the evidence on which the board is to act. The evidence required to be furnished to the board is all that is necessary to be supplied by the plaintiff, as will be seen on examination of the contents of the statements provided for in the act of the legislature. It is entirely in the discretion of the board to permit the plaintiff to offer any further evidence. It may do so, or not, as prompted by its discretion. The refusal by the board to permit the plaintiff to introduce further evidence in regard to the adjustment of rates was matter wholly within their discretion, and was not a denial of any legal right of the plaintiff. Neither was the board bound to hear argument on behalf of plaintiff. This also is submitted to its discretion. It was no more under obligation to hear argument on behalf of plaintiff than is a legislature to hear argument on behalf of parties interested in a bill before them for their action. All the allegations of the complaint just above referred to relate to immaterial or superfluous matters, which the defendants did not admit by their demurrer.

It is averred in the complaint that the ordinance of the board fixing the rates was not duly or lawfully passed, or that it was not published as required by the statute for five successive days. It appears by averment that it was published on six days, viz., on the 21st, 22d, and 23d of February, 1889, and 25th, 26th, and 27th, 1889. It was not published on the 24th of February, 1889.

In the year 1889 the 24th of February fell on Sunday. I am of opinion that the publication was sufficient. If it were not duly or lawfully passed, it was void. The board then had not acted at all, and was therefore guilty

of an act subjecting them to the penalty fixed by law, of removal from office for non-action. If it is void, I cannot see why this action should be brought, unless to procure a judgment that such ordinance is void; certainly there is no need for an injunction to restrain the enforcement of a void ordinance; nor do courts, nor should they, exercise such power or waste their time in considering such an application. That which is void injures no one, and no preventive relief is required or granted in such case, for the plain reason that there is no wrong to be redressed or prevented.

As it does not appear that the plaintiff ever furnished to the board of supervisors the statement (second statement) required by section 3 of the act of 1881, I am of opinion it has failed to place itself in a position entitling it to be heard in a court of equity. The plaintiff must have complied with all the requirements which the statute has imposed on it to enable the board to act understandingly in fixing rates before it is entitled to complain or to be heard in court; when it has failed to comply with the lawful requirements made upon it, it has not done equity. Equity does not act in favor of those who have failed to do equity.

In conclusion, in my opinion, this complaint does not show that the plaintiff has been deprived of due process of law, or that any of its property has been or will be taken for public use without just compensation. Conceding that the rates fixed by the ordinance will on its enforcement yield but $750,000, and that its operating expenses, including taxes, will amount to $442,278.05 (this is the amount stated in paragraph 13 of the complaint), there still remains *as compensation* the sum of $307,721.95, the excess of $750,000 over $442,278.05. It thus appears that the compensation will exceed the cost of service by $307,721.95. The amount of the compensation, it may be said, is small, but with the rate or amount of compensation, when it is allowed, courts have

nothing to do.   This is left by the constitution and statute to the discretion of the board of supervisors, which courts can no more control than the board can control the discretion or judgment of courts.   (See cases above cited from the federal courts.)

For the reasons heretofore given, I am of opinion that the court erred in overruling the demurrer to the complaint, and therefore that the judgment should be reversed.